1804.

Thursday,
September
13th.

MITCHELL *against* SMITH.

IN ERROR.

A contract for the purchase and sale of lands in Pennsylvania under the Connecticut title is unlawful and void, although the act of 11th April 1795, neither expressly says so, nor contains any prohibitory clause, but merely inflicts a penalty upon the offender. Such a penalty implies a prohibition.

THIS was a writ of error to the Common Pleas of *Luzerne* county, and the record presented the following case. *Smith*, the plaintiff below, brought an action of debt against *Mitchell* upon a sealed note for 483 dolls. 33 cts. dated the 11th *March* 1796 and payable to *Smith* or order at the expiration of three years from the date with lawful interest. The defendant pleaded payment with leave to give the special matter in evidence. Upon the trial of the cause before *President* RUSH on the 23d *April* 1802 it was in evidence that the note was given for land near *Frenchtown* in *Luzerne*, and out of the seventeen townships, which land had been granted to the plaintiff by the committee of the *Susquehanna* company agreeably to a resolve of the company. That the plaintiff by deed bearing even date with the note conveyed this land to the defendant. That the plaintiff and defendant went together to view the land before the execution of the note or deed, and that upon the completion of the contract the defendant was put in peaceable possession of the land and had so continued ever since. That the defendant at the time of the contract had full knowledge of the law against intrusions in *Luzerne* county, and of the general dispute relative to titles in the county.

Upon these facts and the act of 11th *April* 1795 the counsel for the defendant insisted that he was entitled to a verdict for the following reasons: First, because the consideration upon which the note was given was illegal, and therefore the note was void. Secondly, because the transaction on which the contract originated was against the general policy of the law, and therefore should not be carried into effect. Thirdly, because the consideration on which the note was given had failed. His Honour in delivering the charge of the court stated their opinion upon the several matters of law against the defendant, and told the jury that if they were of opinion the defendant knew and was acquainted with every material circumstance relative to the bargain, it was their duty to make him pay the money with the

interest thereon; but if they were of opinion he was in any de- 1804.
gree imposed upon or purchased ignorantly, in that case they MITCHELL
ought to find a verdict in his favour. The jury found for the v.
plaintiff. SMITH.

To this charge a bill of exceptions was tendered and sealed, and the record removed to this court.

The act of assembly in question enacts, section 1st, " That " if any person shall after the passing of this act take pos- " session of enter intrude or settle on any lands within the " limits of the counties of *Northampton, Northumberland,* or " *Luzerne,* by virtue or under colour of any conveyance of " half share right or any other pretended title not derived " from the authority of this commonwealth or of the late pro- " prietaries of *Pennsylvania* before the revolution, such per- " son, upon being duly convicted thereof upon indictment in " any court of oyer and terminer, or court of general quar- " ter sessions to be held in the proper county, shall forfeit and " pay the sum of two hundred dollars, one half to the use of the " county, and the other half to the use of the informer; and shall " also be subject to such imprisonment not exceeding twelve " months, as the court before whom such conviction is had may . " in their discretion direct." The second section enacts, " That " every person who shall combine or conspire for the purpose " of conveying possessing or settling on any lands within the " limits aforesaid under any half share right or pretended title " as aforesaid &c. shall for every such offence forfeit a sum not " less than five hundred nor more than one thousand dollars, " one half to the use of the county, and the other half to the use " of the informer; and shall also be subject to such imprison- " ment at hard labour not exceeding eighteen months as the " court in their discretion may direct." 3 *St. Laws* 703.

The cause was argued in *March* and *September* terms 1803 by *W. Tilghman* and *M'Kean* (attorney general) for the plaintiff in error, and by *Rawle* for the defendant in error.

For the plaintiff in error it was contended that the transaction on which the debt arose was forbidden by the law of this state, and therefore that no court of this commonwealth would sustain an action for carrying it into effect. The act of 11th *April* 1795 imposes a penalty of fine and imprisonment upon persons who,

under colour of a conveyance of half share rights, intrude and settle upon lands in *Luzerne* out of the seventeen townships, or who combine or conspire for the purpose of conveying possessing or settling them. The lands sold by *Smith* are of this description; the conveyance and the possession were confessedly under colour of a half share right; and the naked question is whether the contract having this effect in view is not absolutely void in all its parts. Such a contract violates the principles of morality and decency, by producing a contempt for the laws of the country, and thereby creating habits of disobedience and licentiousness; it opposes the principles of sound policy, by nourishing a spirit of hostility to the rights of this state over a portion of her territory solemnly adjudged to be hers by the decree at *Trenton*, and which she has endeavoured to defend by a great variety of laws; and it tends to contradict or evade the particular law in question, a law of extensive and important concern. Under each of these points of view the contract is void.

1. The common law prohibits every thing *contra bonos mores*. *Jones* v. *Randall*. (a) It was upon this principle that a wager as to the sex of the chevalier *d'Eon* was held to be void in *Dacosta* v. *Jones;* (b) and so of a bond given to a woman to live in a state of concubinage, in *Walker* v. *Perkins*. (c) Courts of justice should be preserved in perfect purity, and should refuse all countenance and support to transactions of this kind.

2. In like manner all contracts militating against the general policy of the laws, are prohibited and void. For this reason a wager between two voters with respect to the event of an election before the poll begins is illegal, and no action can be sustained upon it. *Allen* v. *Hearn*. (d) So marriage brocage bonds are void; and the courts set them aside not for the party's sake, but for the benefit of the public. *Debenham* v. *Ox*. (e) It is the same with all contracts in restraint of marriage. *Lowe* v. *Peers*. (f) A promise to indemnify a gaoler for letting a prisoner escape is void, because the consideration is against law; *Martin* v. *Blithman;* (g) and so are general restraints on the exercise

(a) *Cowp*. 39.
(b) *Cowp*. 729.
(c) 3 *Burr*. 1568.
(d) 1 *D. & E.* 56.

(e) 1 *Vez*. 276.
(f) 4 *Burr*. 2230.
(g) *Yelv*. 197.

of a trade, whether by bond covenant or promise, with or without consideration; they are a public mischief. *Mitchell* v. *Reynolds.* (a) It is not necessary that to make the contract void it should be against the policy of the common law; it is equally illegal if it violates the policy of statutes. A promise made by the friend of a bankrupt to pay money in consideration that the assignees and commissioners would forbear to examine him on certain points, is void as being against the policy of the bankrupt laws, *Nerot* v. *Wallace;* (b) and where an *English* subject in *Guernsey* sells goods, knowing it to be the buyer's intention to smuggle them into *England*, he cannot maintain an action in *England* for the price; it is against the policy of the revenue laws, as well as immoral. *Clugas* v. *Penaluna.* (c) And even if a foreigner, not subject to the *English* laws, sells goods with a knowledge that they are to be smuggled into *England*, and assists in the transaction by packing them in a convenient way for smuggling, no court in *England* will sustain an action for the price. *Waymell* v. *Reed.* (d)

3. But it would be sufficient if the case stood merely upon the ground of its being a contract to do a thing which is made unlawful by act of Assembly. It is true that the act does not say that contracts to give possession of land under half share rights, or for the conveyance or purchase of them, shall be void; there was no necessity for it. It prohibits the possession and the combination to convey, and inflicts a severe penalty upon the offenders, and that is enough. " Every contract" says chief justice *Holt* " made for or about any matter or thing which is prohibit-" ed and made unlawful by any statute, is a void contract, " though the statute itself doth not mention that it shall be so, " but only inflicts a penalty on the offender; because *a penalty* " *implies a prohibition*, though there are no prohibitory words " in the statute." *Bartlett* v. *Vinor.* (e) The consideration is illegal, and the assumpsit or obligation void. *Allen* v. *Rescous,* (f), *Sullivan* v. *Greaves* (g), *Mitchell* v. *Cockburne* (h), *Stackpole* v. *Earle* (i), *Baker* v. *Rogers* (k).

1804.

MITCHELL.
*v.*
SMITH.

(a) 1 *P. Wms.* 192.
(b) 3 *D. & E.* 17.
(c) 4 *D. & E.* 466.
(d) 5 *D. & E.* 599.
(e) *Carth.* 252.

(f) 2 *Lev.* 174.
(g) *Park* 8.
(h) 2 *H. Bl.* 379.
(i) 2 *Wils.* 133.
(k) *Cro. Eliz.* 788.

For the defendant in error it was argued, that since the note in question was given under a full knowledge of the circumstances without a suggestion of fraud, he should be made to pay it; for it is good at common law, and a good consideration was given for it; it is not against the policy of the laws; and it is not void under the act of 11th *April* 1795.

1. It is good at common law. The mere occupancy of the land was a beneficial interest, and the sale of a possession was always valid. It does not appear that there is in any person a title to this land derived from this state; it must therefore be taken to be such as *Smith* might lawfully enter to settle and improve, those being the only terms upon which land is granted by this state since the act of 22d *September* 1794. The possession was a good consideration for the note; and if *Smith* had not even a colour of title, and the deed passed nothing, still the sale passed an interest against every one but the commonwealth and claimants under her; no third person could eject *Mitchell*, and he might maintain trespass. *Bull. N. P.* 85. 93.

2. It does not oppose the policy of the laws. This is always a delicate question for courts; to a certain extent the decision involves matters not strictly within their province. But at all events the application of the principle should be very plain; and there is no case in which it could be less so than in this. It is impossible to say what the policy of this state has been in this particular. It has assumed every shape. At times the laws have been gentle, at other times severe; in some instances persuasive, in others menacing; and from a desire to promote settlement and emigration, at the same moment that it has supported its pretensions to the territory in question, the legislature has left it in doubt which was the object most at heart, and of course whether the policy of the laws was most evident to encourage population, or to destroy the *Connecticut* title. If settlement and population be the policy, the present contract favoured them.

3. The contract is not void under the intrusion law. The act contains no prohibitory words, nor does it declare the contract to be void; and it may be laid down as a safe principle that where a statute imposes a penalty upon doing an act which is not an offence at common law, and contains no general prohibitory clause, a contract relative to the subject of it is not void, though the parties may be subject to the penalty. The general rule is that a penal statute should be strictly construed; and if

the statute in creating a new offence specifies particular reme- 1804.
dies without containing a general prohibitory clause, this strict MITCHELL
construction is applied not only to the character of the offence *v.*
but to the mode of punishment. *Castle's case* (a), *King* v. *Mar-* SMITH.
*riott* (b), *King* v. *Wright* (c), *King* v. *Balme* (d), *Hartley* v.
*Hooker.* (e) Now avoiding the contract is surely a mode of
punishment, a punishment of the severest nature because the
offender does not read it in the law. But consider the avoid-
ance of the contract not as a mode of punishment, but as a mere
effect of the law, still it is a violation of this principle of strict
construction.

The *stat.* 16 *Car.* 2. made *contracts* for money *won* at play
void; the *stat.* 9 *Anne* says that bills notes &c. for money won
or lent at play shall be void; but as it does not say that *contracts*
for money *lent* at play shall be void, such a contract was support-
ed in *Robinson* v. *Bland.* (f) So a bond to reimburse a person
who has paid a difference upon a stock contract is good, although
7 *G.* 2. *c.* 8. imposes the penalty of 100*l.* upon paying such dif-
ferences. *Faikney* v. *Reynous* (g), *Petrie* v. *Hannay* (h), *Wet-*
*tenhall* v. *Wood* (i), *Barjear* v. *Walmsley* (k). The cases cited
on the other side do not apply; they are cases of offences at
common law, or under statutes making void the contracts or
containing prohibitory words. *Baker* v. *Rogers* is the case of
simony, which Lord *Coke* says is odious to the common law.
3 *Inst.* 56. 4 *Bac.* 465. *Stackpole* v. *Earle* was a bargain ex-
pressly made void by 5 *and* 6 *Edw.* 6. *Sullivan* v. *Greaves* and
*Mitchell* v. *Cockburne* were under 6 *G.* 1. *c.* 18. which declares
such contracts to be *ipso facto* void. The only case remaining
is *Bartlett* v. *Vinor* containing Lord *Holt's dictum;* but it was
in a case of simony and should be confined to it. The revenue
cases may be considered as of the same nature. The customs
are of great antiquity, a branch of the royal revenue, and there-
fore smuggling may be an offence at common law and against
the constitution; the *English* courts have however in cases affect-
ing the revenue strained the law to its utmost limit. The act

(a) *Cro. Jac.* 644.
(b) 1 *Show.* 398. *note* (b)
(c) 1 *Burr.* 544.
(d) *Cowp.* 650.
(e) *Cowp.* 524.

(f) 2 *Burr.* 1081.
(g) 4 *Burr.* 2069.
(h) 3 *D. & E.* 418.
(i) 1 *Esp.* 18.
(k) 2 *Stra.* 1249.

of 6th *April* 1802, which makes this kind of contract void, shews
that it was not so before. *5 St. Laws* 198.

Mitchell
*v.*
Smith.

*Cur. adv. vult.*

On this day the judges delivered their opinions.

Shippen C. J. This is a writ of error to reverse a judgment rendered in the court of Common Pleas for the county of *Luzerne*, in an action brought on a bill obligatory for the sum of four hundred and eighty three dollars and thirty three cents; to which the defendant pleaded payment, with leave to give special matters in evidence.

It appears on the record that the consideration for this bill was a tract of land conveyed by the plaintiff to the defendant, lying without the seventeen townships, in the county of *Luzerne*, and held by him under a deed from a committee of the *Susquehanna* company, under the *Connecticut* title, and not derived from the authority of this commonwealth, or of the late proprietaries of *Pennsylvania* before the revolution. The principal question in the case is whether this be a legal or illegal consideration for the bill, and whether the contract for the sale and purchase of this land is a violation of the laws of this commonwealth, so tainting the whole transaction, as that this court cannot legally afford their aid to carry the contract into execution.

The mischiefs intended to be remedied by the act of 11th *April* 1795, were of a grievous nature. A warfare had been carried on between the claimants of land under the title of *Connecticut*, and the claimants under *Pennsylvania* for many years, and many lives had been lost in the contest. It was at length found necessary for congress to interpose. They thought fit to appoint judges or commissioners to decide upon the claims of the respective states, who after a full and solemn hearing made their decree at *Trenton*, establishing the right of government over the country in question to be in *Pennsylvania*, but without deciding the particular titles of individuals claiming the right of soil. Notwithstanding this decree, not only the old settlers under the title of *Connecticut* retained their possessions, but a great number of new persons under the same pretended title intruded into this part of *Pennsylvania*, and possessed themselves of, and settled, such vacant lands as they chose.

The legislature of *Pennsylvania* passed repeated acts of Assembly to remedy the evils consequent upon such intrusions, some of them with a view to compromise with the first settlers. All however proved ineffectual to prevent new illegal settlements. At length the act in question was passed, called the Intrusion Law. This act is of a public nature, and intended to remedy a public evil. The point relied upon by the plaintiff is that the land sold by the plaintiff and purchased by the defendant, was fairly bought and sold, all the circumstances being fully known to both parties, and carried into execution on the part of the defendant, by his taking possession and occupying the land; and that although the act of Assembly imposes a penalty on the party offending, yet it *no where invalidates the contract.* On the part of the defendant it is contended that the contract which was the foundation of this obligation, having been made in violation of the good policy and direct provisions of the act of Assembly, this court will not afford their aid to carry such a contract into execution.

What then was the contract? It appears to be a contract for selling and conveying a tract of land which the plaintiff held under a deed from the committee of the *Susquehanna* company, or in other words under a *Connecticut* title. What says the law? " If any person shall enter into possession of, or shall " combine or conspire for the purpose of *conveying*, possessing, " or settling on any lands within the ascertained limits, under " colour of any half share right or pretended title not derived " under the government, he shall forfeit," &c. Is not the actual conveying, possessing, and settling this land direct evidence of combining for that purpose, and of course a direct violation of the law? But it is objected that where a law creates a new offence and prescribes a specified mode of punishment, no other mode can be pursued. This is generally true where the act contains no prohibitory clause; in which case the common law punishment by indictment might be inflicted, although the punishment directed by the act was by bill, plaint, or information. Here indeed there is no general prohibitory clause, the act directing only that if any person shall do so and so, he shall be punished so and so. Is this however a case involving a double punishment by prosecution? All that is contended for is that the contract is illegal, being founded on a breach of the law, and of consequence a void contract, and cannot be enforced

MITCHELL
*v.*
SMITH.

in a court of law. And for this purpose there cannot be a more express authority than the case in *Carth.* 252. where Lord Chief Justice *Holt* says, " that every *contract* made by or about " a matter or thing which is prohibited, and made unlawful by " any statute, is a void contract, though the statute itself doth " not mention that it shall be so, but only inflicts a penalty on " the offender; because a penalty implies a prohibition, though " there are no prohibitory words in the statute." This authority, although perhaps it might not warrant a conclusion that a penalty implies a prohibition for the purpose of making the offence punishable by indictment, in case the law had prescribed another and a specific punishment for the offence, yet it certainly is an authority to prove that a *contract* about a matter prohibited by statute is unlawful and a void contract, although the act does not expressly say so, and that a penalty implies a prohibition, so as to make the contract void. The spirit of this law in *Carthew* has been followed up in numerous modern cases, particularly where goods have been purchased abroad with an intent to smuggle them into *England*. In these cases the seller of the goods, although a foreigner residing in a foreign country, cannot recover the price of his goods in *England*, if he were any way concerned in the smuggling transaction; the whole contract being tainted and nullified by the illegal act, so as to prevent the recovery of the debt in the country whose laws were violated.

I would barely add, that if we could enforce the payment of the consideration money for this land, we must likewise have been obliged on the other hand to enforce the delivery of the possession, in case the money had been paid and possession refused, which clearly would have been a most glaring infraction of the law; the remedies must be mutual or not at all.

This subject has been lately canvassed in this court, in the case of *Maybin* v. *Coulon*, where we were compelled to resist the payment of an otherwise honest demand, on account of its being founded on, and connected with a breach of the laws of trade, in covering the property of a foreigner by using the name of a citizen of the *United States*, in obtaining the register of a ship.

For these reasons I am of opinion the judgment below must be reversed.

YEATES J. Whether this case be considered on *principle* or *precedent*, I am of opinion that the judgment of the Common Pleas cannot be supported.

Courts of justice sit to carry into execution dispassionately the general will of the community disclosed by the laws. It would seem a solecism in jurisprudence that a contract which necessarily leads to defeat the provisions of an act of the legislature, of the highest public concernment, should receive judicial sanction and support. The single bill on which the action is founded is dated 11th *March* 1796, and therefore the laws in force at that time only, can affect our determination. The intrusion act was passed on the 11th *April* 1795. [His Honour here recited the first two sections.]

The bill of exceptions states that a deed bearing equal date with the single bill, was executed by the defendant in error to the plaintiff for 1500 acres of land, in *Smithfield* township in the county of *Luzerne*, which the former claimed by a grant of the committee of the *Susquehanna* company, out of the seventeen townships; that both parties went together to view the lands previous to the execution of the bill or deed, and that the plaintiff in error was *put in possession*, and *continued* therein since the time of the contract.

It is evident therefore that the agreement was entered into, in direct violation of the intrusion act, *for the purpose of conveying, possessing, and settling* the lands interdicted, *under a half share right or pretended title not derived* from the authority of this commonwealth, or of the late proprietaries. It openly attacked the sovereignty of the state, over a considerable part of the lands clearly comprised within her chartered limits.

In *Booth et al.* v. *Hodgson et al.* 6 *T. R.* 409. Lord Chief Justice *Kenyon* observes, that " it is a maxim in our law, that " the plaintiff must shew that he stands on a fair ground, when " he calls on a court of justice to administer relief to him." And in *Jaques* v. *Withey and Reid*, 1 *H. Bl.* 67. it is said by counsel, and seemingly assented to by the court, that " where an " action is in affirmance of an illegal contract, and the object of " it is to enforce the performance of an engagement prohibited " by law, clearly such an action was in no case to be main- " tained." And Lord Chief Justice *Ellenborough* in the late case of *Edgar et al.* v. *Fowler* in 1803, has said, " We will not " assist an illegal transaction in any respect; we leave the matter

1804.

MITCHELL
v.
SMITH.

" as we find it, and then the maxim applies, *melior est conditio* "*possidentis.*" *3 East* 225. A broad ground is laid down by Lord Chief Justice *Holt* in *Bartlett* v. *Vinor, Carth.* 252. in these words: " Every contract made for or about any matter or " thing, which is prohibited and made unlawful by any statute " is a *void contract, though the statute itself doth not mention* " *that it shall be so,* but only inflicts a penalty on the offender; " because a *penalty implies a prohibition,* though there are no " prohibitory words in the statute." If the law is correctly laid down in these authorities, I run little hazard in asserting that the suit of the plaintiff in the Common Pleas cannot be supported.

It cannot be denied that contracts which violate the rules of decency or morality, or oppose principles of sound policy of the country are illegal and void. The cases cited on the part of the plaintiff in error fully prove the positions.

So also of contracts which immediately tend to defeat the legislative provisions for the security and peace of the community though not made void by statutes. Thus in *Biggs* v. *Lawrence,* 3 *T. R.* 454. a contract for goods to be smuggled into *England* was held invalid; and it is there said that one who seeks redress in a court of law must not shew that he broke the laws of his country. In *Clugas* v. *Penaluna,* 4 *T. R.* 466. it was resolved that an inhabitant of *Guernsey* cannot recover in *England* for goods sold there, if intended to be smuggled into *England.* It was held immoral to evade the laws of the country, though the act was done in *Guernsey,* and though the contract might be legal in *Guernsey* and enforced there. In *Waymell* v. *Reed et al.* 1 *T. R.* 599. a vendor of goods abroad shall not recover the value of goods packed up in order to be smuggled into *England;* for even foreigners shall not be allowed to subvert the revenue laws. In *Mitchell et al.* v. *Cockburne,* 2 *H. Bl.* 379., A. and B. were engaged in a partnership in insuring ships &c. which was carried on in the name of A., and A. paid the whole of the losses; such a partnership being illegal by the statute of 6 *Geo.* 1. *c.* 18. A. could not maintain an action against B. to recover a share of the money that had been so paid; because no contract arising *directly* out of such an illegal proceeding could be the foundation of an action. In the case before cited, *Booth et al.* v. *Hodgson,* 6 *T. R.* 405. A. B. and C. became partners in insuring ships contrary to the said statute of 6 *G.* 1. *c.* 18. *sec.* 12.

but it was agreed that the policies should be underwritten in the name of A. only. Several policies were effected, and the premiums received by C. and D., and it was held that A. could not recover against C. and D. And in *Camden* v. *Anderson*, 6 *T. R.* 730. a policy effected in contravention of a statute made for the purpose of protecting the monopoly granted to the *East India* company was held void. Courts will not enforce contracts injurious to and against the public good. Per Ch. Justice, 2 *Wils.* 348. Many contracts which are not against morality are still void as being against the maxims of sound policy. Per Lord *Mansfield*, *Cowp.* 39.; and again in the same book *p.* 343. his lordship uses the following expressions: " The objection that a contract is immoral or illegal as between plaintiff and defendant sounds at all times very ill in the mouth of the defendant. It is not for his sake however that the objection is ever allowed; but it is founded in general principles of policy which the defendant has the advantage of, contrary to the real justice as between him and the plaintiff, by accident, if I may say so. The principle of public policy is this, *ex dolo malo non oritur actio*. No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act, if from the plaintiff's own stating or otherwise. If the cause of action appears to arise *ex turpi causa* or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon this ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. Where both are *equally* in the wrong, *potior est conditio defendentis.*" These observations afford a decisive answer to part of the ingenious arguments of the defendant's counsel.

But it has been further objected that most if not all of the cases relied on, either respect offences prohibited at common law, or such as had been theretofore created by statute, and particularly smuggling transactions, which the courts were extremely jealous of, as they defrauded the royal revenue.

It was said that the act of 6th *April* 1802 (5 *St. Laws* 198.) was made to supply the very deficiency which existed before, and which was now attempted to be supplied by a judicial decision; for *sec.* 4th vacates such contracts as the present, and the act did not take effect till the 1st *May* 1802.

I answer that it would be no great stride, in my idea, to

1804.
———
MITCHELL
*v.*
SMITH.

maintain that after the decree at *Trenton*, the sales of titles within the limits of *Pennsylvania*, under the grants of a sister state not recognised by our laws, would be indictable on the principles of the common law. Such acts are immediate attacks on the sovereignty of this state, tend to violences of the most alarming nature, and are public evil examples. But supposing it to be otherwise, and that the authorities in the *English* books related merely to smuggling transactions, (though the fact is contrary,) I take it that the same grounds of decision which influenced the courts in *England* to determine such contracts to be invalid, would equally operate on our minds to declare the same as to agreements which intimately affect the public peace and national prosperity. In both cases the subject matter is of great magnitude. The public revenue is endangered and affected. Individuals are defrauded. Why should we not be as tenacious as *British* judges in instances of public revenue being defrauded, tending to infractions of the peace, and where the very acts of contracting are express *denials* of the *right* of the people over a large portion of the state? It was candidly admitted during the argument that the deed, of which the single bill in question was the consideration, vested no right or interest whatever in the grantee.

I will only add, that the subject of a contract ought to be such a thing as men have a lawful right and power of stipulating about, at pleasure. 1 *Pow. Cont.* 164. The law, by forbidding an act, takes from the contractor the power of obliging himself to do it, and consequently prevents the person contracting from gaining any right of requiring it to be done. *Id.* 165. A contract or agreement is unlawful if it be to encourage unlawful acts or omissions. *Id.* 195. On the whole, I am of opinion that the judgment in the Common Pleas be reversed.

SMITH J. concurred, and assigned his reasons.

BRACKENRIDGE J. The consideration of the bill in question is the giving possession and the sale of a tract of land under a title derived from what is called the *Susquehanna* company. This claim is founded on the principle that the land is without the charter boundary of *Pennsylvania*. Hence it is adverse to the claim of this state both as to soil and jurisdiction. It is true the mouth of the claimant paramount, the state of *Connecticut*,

from whom the company derive their claim, is shut by a decision. But this does not conclude the possessor as to right of soil, nor in fact will it conclude his exertions as to jurisdiction. The very object of the sale is to induce settlers, and increase strength to support vexatiously the claim in the courts of the *United States, or* by force independent of law. Shall the courts of the state be called upon to enforce contracts and assist combinations against herself? Exercising jurisdiction, the state is bound to preserve the peace and aid contracts, but not such as militate against her own rights. It would be unnatural, and against reason, which is a ground of the common law. It is against public policy. Self preservation forbids it. So that independent of any act of the legislature I must hold the transfer illegal, and the obligation given under such consideration void.