Tilghman C. J.
A mandamus having issued, directed to the commissioners of the city and county of Philadelphia, commanding them to draw an order on the treasurer to pay to Robert Taylor the sum of seventy dollars, or shew cause why the same has not been done, the three commissioners have made each a separate return. By these returns it appears, that Taylor’s account is for forty chairs sold to the agent of the commissioners on the day preceding the last general election, and that the chairs were purchased by the commissioners for the purpose of accommodating those persons who were legally employed in holding the election. At the time of the purchase Taylor himself was one of the commissioners, but is not so now; the other two commissioners were, Malcolm M'Donnald and John Thompson, who, together with Frederick Axe, form the present board. M'Donnald says, that he was not consulted on the purchase of the chairs, and that he thinks it an illegal transaction, for which he assigns his reasons. Axe entertains the same opinion, as to its illegality, but Thompson declares, that the board of commissioners agreed to purchase the chairs at a time when they were all present, although he does not expressly say, that M'Donnald consented, nor does he expressly say, that orders were given,to the agent to purchase the chairs of Taylor. So that there is no absolute contradiction between the assertions of M'Donnald and Thompson. The opinion of Thompson, however, is, that there was nothing illegal in the business, and that the account ought to be paid.
Two reasons are assigned against drawing the order in favour of Taylor. First, That the commissioners had no right to furnish chairs for the election. Second, That the purchase being made of one of the commissioners, the contract was contrary to an act of assembly, and therefore void.
The first objection has not been much insisted on. Indeed. it ought not to have been, because, Thompson asserts in *195 his return, that by custom' of long standing, the commissioners have been used to provide the .accommodations necessary for the election. This appears so clear; that I have no doubt upon the subí ect. The election must be held. It ought not , , , , , , . ,, .. to be held without the conveniences which contribute to the ease and despatch of a laborious business. It is held for the benefit of the people of the city and county, and therefore they ought to defray the expense. There is no law expressly ordering this, but it is not to be expected, that the laws can enter into all the minute details of .expense. Custom, where it is so reasonable, may be taken as an interpreter.
’The second objection is founded on the act of 21st March, 1806, by which it is declared to be a misdemeanour in office, if any county commissioner “ shall receive or hold any con- “ tract, or shall be either directly or indirectly interested in “ the management or superintendance of any public work or c‘ improvement, by, and under the áuthority of the board of “ commissioners of such county.” It has been contended, on behalf of Mr. 'Taylor, that the prohibition of this act was confined to public works, or improvements, such as buildings, bridges, &c. The meaning of the law, where the words are ambiguous, may be best known by considering the mischief which it was intended to prevent. Now it is certain, that there is danger in permitting a body of men intrusted with the public money, to purchase from themselves the articles' required for the public service; because men are generally partial ’to themselves, and therefore inclined to sell their own goods to the best advantage; but being both buyers and sellers, they would have the game completely in their own hands. One would suppose, therefore, if the words will bear it, that all manner of contracts, either for the sale of goods or employment in public works, were intended to be prohibited. And it appears to me, that the words of this law will well bear such a construction.
The sentence may be divided into two members, the receiving or holding any contract, by, or under the authority of the board of commissioners, or the being directly or indirectly concerned in the management or superintendance of any public work, by, or under their authority. The limiting it to the management or superintendance of works would go but a small way in preventing mischief, for then the various •contracts for furnishing building materials would be open. *196 Nor is there any reason for prohibiting contracts with regard to public works which applies not with equal force to the pUrcjjase 0'f furniture. The commissioners are to be prevented from contracting with themselves. Secure that, and the , object oi the law is attained. In the present instance there js no suspicion of foul play, or corruption. We know the articles sold, and we know the general selling price. The market price was not exceeded, and I am glad of it. It is more agreeable to settle the law in a case of this kind than where there might be suspicion of corruption.
Having fixed the construction of the law, the consequences necessary to decide the present question,are easily deduced.
We are asked by Mr. Taylor to enforce, by an extraordinary interposition, the performance of a contract declared by act of assembly to be a misdemeanor in office. The matter will not bear a moment’s reflection. It would be an abuse of a mandamus to apply it to such a purpose. In the cases of Mitchell v. Smith,(a) and Anthony's executors v. Coulon, this Court refused to sustain an action on a contract prohibited by law. Much less would they enforce it by an extraordinary remedy, which is' always in some measure subject to their discretion. Mr. Taylor, however, is not to lose his property. If the contract was illegal, the chairs still belong to him, and will no doubt be delivered by the commissioners pn demand.
Yeates J. and Brackenridge J. concurred.
Rule discharged.

 1 Binn. 110,