## Eberman *against* Reitzel.

A claim which is founded upon a transaction which is either *malum prohibitum* or *malum in se*, cannot be enforced by an action of any kind.

A contract of purchase of a prize lottery ticket, the sale of which was prohibited by law, cannot be enforced by action, nor will the purchaser be entitled to recover in an action for money had and received upon proof that the seller of the ticket received the amount of the prize money.

ERROR to the District Court of *Lancaster* county.

John Eberman against Philip Reitzel. This was an action on the case for money had and received.

The defendant was a lottery broker in the city of Lancaster, and as the plaintiff alleged, contracted to sell him the one-fourth of a ticket in the New York Consolidated Lottery, Extra Class, No. 37. The ticket was not delivered by the defendant to the plaintiff, and after the drawing the defendant received the proceeds of the prize which it drew, amounting to $5312.50.

The defendant made defence on two grounds: first, that the contract of sale had never been made; and second, that if it had been, the sale of foreign lottery tickets was prohibited by the laws of Pennsylvania, and this was a bar to the plaintiff's recovery.

The court below (HAYS, President) was of opinion that the contract of sale of the ticket was not executed so as to entitle the plaintiff to recover, but referred the facts in reference to this part of the case to the jury, with instructions that on the second ground of defence taken by the defendant, the plaintiff was not entitled to recover.

*Fordney* and *Montgomery*, for plaintiff in error, contended that although the sale of the ticket was illegal, and as a contract of sale could not be enforced, yet the sale having been made, and the prize-money received by the defendant, he thereby became a trustee of the plaintiff, and liable to this action for money had and received. 7 *Johns.* 434; 2 *Hall's Rep.* 526; 3 *Term Rep.* 418; 2 *Wils.* 309; *Cowp.* 790; *Doug.* 696.

*Franklin*, for defendant in error, on the same point, cited *Purd. Dig.* 344; 1 *Smith* 246, *Act of* 17th *of February* 1762, *sec.* 4; *Penn. Laws of* 1811, 226, *sec.* 27; 4 *Serg. & Rawle* 151; 5 *Johns.*

I. — Q

[Eberman v. Reitzel.]

327; 6 *Term Rep.* 405; 2 *Hen. Black.* 379; 2 *Caines'* 147; 11 *Serg. & Rawle* 164; 3 *Taun.* 6; 2 *Bos. & Pul.* 371; 3 *Vez., Jr.* 373.

The opinion of the Court was delivered by

HUSTON, J.—John Eberman brought this suit to recover from the defendant the amount drawn on a quarter-ticket in the New York Consolidated Lottery, Class No. 37, for 1833.

Philip Reitzel was a vender of lottery tickets in the city of Lancaster; John Eberman, a citizen of Lancaster; the ticket, if bought by him, was bought in Lancaster.

There was much testimony as to the facts. Plaintiff alleged that he had selected the ticket, and directed it to be laid by for him until he would call and pay for it; this a few days before the drawing of the lottery.

Defendant alleged, that it was the custom, well known to the plaintiff, that the purchaser should call and pay for such ticket so laid by, before the drawing was had, and if not so paid for, the ticket was, on the day of the drawing, put among the undrawn tickets, and the man who had selected it, but not paid for it, in such case was not considered a purchaser, and had no right to the ticket or any prize it might draw; that such tickets were not entered as sold until paid for, but became the property of the owner of the office. The ticket in question drew the one-fourth of $25,000; and Reitzel drew the money and claimed it as his own, as being drawn on an unsold ticket. Eberman did not offer to pay for it until it was known it had drawn a prize.

There might have been some difficulty in the case, as the testimony was in some respects variant, but the defendant also relied on what follows:

The Union Canal in this state had, by Act of Assembly, at that time the exclusive right to sell lottery tickets in this state, in its own lotteries, and the sale of lottery tickets in any other lottery, either in this state, or tickets of lotteries in other states, was prohibited under a pretty severe penalty.

The judge, after stating the facts and submitting them to the jury, said, " but supposing these points to be found in favour of the plaintiff, can he recover in this case, being a suit founded on the sale of a lottery ticket prohibited by law? I am of opinion he cannot. The transaction on which the suit is founded, out of which it has grown, and with which it is connected, so as to make it necessarily a part of plaintiff's case, being illegal, this action cannot be sustained."

This was the only point argued and decided here. If this opinion is correct, there is an end of the cause.

It was admitted the sale of the ticket was illegal, and that no suit could be supported on the contract of sale. But it was attempted to take a distinction, and contended that Reitzel received

[Eberman v. Reitzel.]

the amount of the prize as the agent of the plaintiff, and held the money as trustee for plaintiff.

The two cases principally relied on by plaintiff's counsel were *Browning* v. *Morris,* (*Cowper* 790,) in which it is said there is a difference between the person who insures lottery tickets, on whom a penalty is imposed, and the person insured, on whom no penalty is imposed. Yet, it is expressly said, the law which will admit him to recover the premium paid, will not assist the party who made the illegal contract to recover from the office-keeper any money he may win.

I am not sure the position taken in the first part of this case is supported by either prior or subsequent cases.

2 *Hall's Reports* 526, was much relied on. In that case the seller of the ticket received the prize-money from the managers of the lottery, as agent for the holder of the ticket. After this, Kane, the owner of the ticket, lent part of the money to the man of whom he had bought the ticket, and took his note. To a suit on this note, the illegality of the sale of the ticket was set up as a defence. The court admitted that Kane might not have been able to obtain the prize-money, but having got it, and lent it, the borrower could not go back and inquire how Kane got the money, even though the borrower was the person who sold the ticket in violation of law; no third person claimed it, or denied Kane's right to it. It is sufficient to say that is not the case before us. The plaintiff here never had the money in question. The defendant never admitted the plaintiff's right to it. This matter is not new in this state. In *Mitchell* v. *Smith,* (1 *Binn.* 110,) which was a suit on a note given for a Connecticut title to lands, a sale of which was prohibited by Act of Assembly, the defendant had the land and was living on it. The broad principle was laid down and supported by reason and abundant authority, that a contract made in a matter prohibited by statute, cannot be enforced in a court of the state, though not expressly declared to be void by the Act of Assembly. Forbidding a thing, and imposing a penalty, is a prohibition, and neither party can sustain any suit on such contract.

In *Seidenbender* v. *Charles's Administrators,* (4 *Serg. & Rawle* 151) this matter came again before this court, was argued by the most able counsel, and a *seriatim* opinion by each of the judges, and decided in the same way. The matter ought to be considered at rest here.

As to the distinction attempted to be taken, making one of the parties to the illegal contract, and who has received money on it, a trustee for the other; this also has been solemnly decided.

In 6 *Durn. & East* 405, an Act of Parliament had forbidden all companies or associations of men (except certain incorporated companies) from insuring. A, B, and C, agreed to be partners in insuring, and A alone signed the policies. B and C, who seem

to have been brokers, received the premiums to a large amount. On a suit by A, he could not recover either the whole or a proportion of the money received by B and C. The business was prohibited; and it was not allowed to turn a party in the illegal transaction into a receiver or trustee for the other, and thus hold them liable to a suit by him.

*Edgar* v. *Fowler*, (*3 East* 222) is even stronger. An account had been rendered, showing a balance due one party; notice had been given not to pay it over. Lord Ellenborough said the money does not appear to have been paid into the defendants' hands. Where the contract is illegal, the money may always be stopped while it is in *transitu* to the person who would have been entitled to it if the contract had been lawful.

♦Wherever the transaction on which the claim is founded must necessarily be proved to make out the plaintiff's case, and that transaction is *malum in se*, or prohibited by legislative enactment, there can be no recovery. The rule must be general, and not frittered away, nor lost sight of, by changing the form of action or giving plausible names to forbidden acts.

Judgment affirmed.