## Case No. 16,778.

UNITED STATES ex rel. TURNER v. WRIGHT.

[20 Leg. Int. 21;[1] 5 Phila. 296; 2 Pittsb. Rep. 370; 5 Leg. & Jus. Rep. 10; 10 Pittsb. Leg. J. 154.]

Circuit Court, W. D. Pennsylvania. 1862.

ARMY—ENLISTMENT OF MINORS—OATH OF ENLISTMENT—HABEAS CORPUS—DESERTION.

1. Act of congress of February 13, 1862 [12 Stat. 339], construed. The oath of enlistment, where the person enlisted is under eighteen, is not conclusive upon the courts, but is upon the recruiting officer, for whose protection the proviso was inserted in the act.

[Cited in Re Davison, 4 Fed. 509; Re Chapman, 37 Fed. 330.]

2. The return to the writ of habeas corpus, does not make the minor a deserter. There

---

[1] [Reprinted from 20 Leg. Int. 215, by permission.]

can be no criminal desertion if the enlistment was illegal.

[Cited in Re Zimmerman, 30 Fed. 181.]

[This was an application by Elizabeth Turner for a writ of habeas corpus, directed Capt. E. S. Wright of the United States army, to procure the release of an enlisted minor. Heard upon the return to the writ.]

Mr. Carnahan, U. S. Dist. Atty.
James H. Hopkins, for relator.

McCANDLESS, District Judge. Considering the reprehensible conduct of this young man, Theodore Turner, whose discharge is asked for, I do not feel disposed to grant it, unless required by the rules of law. He is neither an idiot nor a lunatic, but seems gifted with more than ordinary intelligence. And yet, to obtain the compensation as a substitute for a drafted soldier, he imposed not only upon him, but upon the military officers of the United States. Although but nineteen years of age, he represented himself as one month over twenty-one, and received the sum agreed to be paid. He may have designed to act in good faith, until maternal and family ties were interposed, but this cannot palliate the utterance of a falsehood, to which he added the semblance of truth, by giving to it the solemnity of a written declaration, almost, but not quite, sanctioned by an oath. This allegation, fortunately for him, in the printed affidavit, is mere matter of description, and is no part of the oath of enlistment. And Captain Luddington, the United States mustering officer, testifies that he did not swear him to his age. The mother, the surviving parent, asks his discharge upon the ground of minority, and the proof before the court is clear that he was but nineteen years of age on the 2d day of October last.

The first objection raised by the United States attorney is, that by the act of the 13th of February, 1862, the oath of enlistment, taken by the recruit, shall be conclusive as to his age. Conclusive upon whom? Upon the mustering officer, who is prohibited by the proviso of the section from mustering into the United States service any one under the age of eighteen. The act was passed to relieve the secretary of war from the herculean labor of passing upon the thousands of applications for the release of persons who had been mustered into the service without the consent of their parents or guardians. And while admonishing the mustering officer not to receive any under the age of eighteen, yet if he did so, the oath of enlistment taken by the recruit should be his protection. Because, by the act of 1802, to which we shall presently refer, the recruiting officer was subject to a penalty for enlisting a minor without the consent of his parent or guardian, which was to be deducted from that officer's pay and emoluments. Congress never intended that the oath, however false, should be binding on

the courts, or give validity to a contract which an unrepealed statute declared to be illegal. Aside from this, there was no oath administered here.

This, then, is a contract made by a minor. Let us see whether it is sanctioned or prohibited by the acts of congress. The act of 1802 [2 Stat. 135] declares that no person under the age of twenty-one years shall be enlisted by any officer, or held in the service of the United States, without the consent of his parent, or guardian, or master, first had and obtained, if any he had. The act of January 20, 1813 [2 Stat. 791], provided that this consent should be first obtained in writing. And the act of December 10, 1814 [3 Stat. 146], repealed this section of the act of 1813, but left intact the act of 1802, which requires the previous consent, but does not require that it should be in writing. It therefore appears in plain Saxon, that the contract of enlistment with a minor, being prohibited by the statute, is not merely voidable, but absolutely void.

This question is not so novel as I thought when I commenced its investigation. It was, in some of its features, discussed before Mr. Justice Coulter, not only an able and learned judge, but a statesman of national reputation, whose long and brilliant career in the house of representatives made him familiar with the acts of the national legislature. In the case of Com. v. Fox, 7 Barr [7 Pa. St.] 338, he says: "The enlistment and holding of the minor, under the circumstances mentioned in the act, is against the law, and the officer who enlisted him is guilty of an offence for which he may be amerced by the government. A penalty inflicted by statute for an act, implies a prohibition of the act, so as to make a contract relating to it void. 1 Bin. 118. Here there is not only a penalty imposed, but the act is declared by the statute to be illegal. I will not say that congress may not declare the enlistment of minors to be lawful and valid, but they have not done so in relation to the army of the United States." But until congress interposes, we must take the law as we find it, and regard the claim which the law of God, of nature, of the state, and of the United States, gives the father to the services of his child until he arrives at the age of majority, and which renders the minor unable to make a valid contract.

It is further contended, that as he perpetrated a fraud, not only on the government, but the drafted soldier, he is bound. But Mr. Justice Story says, in [Tucker v. Moreland] 10 Pet. [35 U. S.] 77, this has never been held sufficient, for it would otherwise take away the very protection which the law intends to throw around him, to guard him from the effects of his folly, rashness and misconduct.

Lastly, it is objected that he is a deserter, and subject to military law. The return to this writ does not make him a deserter. There can be no criminal desertion if the enlistment was illegal. It was a declaration, merely, of an intention not to be bound—a disclaimer of the contract which, under the act of congress, he had a right to make, in the absence of the consent of his parent or guardian. In the Case of Carlton, 7 Cow. 471, although the minor had represented to the officer enlisting him that he was over twenty-one years of age, and had no father or guardian, the court declared the contract and enlistment void, and discharged the soldier. And in the case in Barr [7 Pa. St.] referred to, Judge Coulter says: In the presence of an enemy, or in an enemy's country, even camp followers would probably be amenable to martial law; for if they were not, the safety of the army would be somewhat jeoparded by their desertion to the enemy. It could only be in that light that a person unlawfully enlisted, and held without authority of law, could be amenable to military punishment. But this is not a case of that kind. And although in that case the return showed that the minor was a deserter, and that like Turner here, had surrendered himself, the minor was discharged. However much we should like to see this young man expiate his offence by some reasonable punishment, the law of the case is clearly with him, and he is entitled to his discharge.

Theodore M. Turner is discharged from the custody of the provost marshal, upon payment to the United States marshal, for the use of David Klingsmith, the sum of one hundred and seventy-five dollars, and the costs of this writ.