**In re Anonymous No. 123 D.B. 96**

Disciplinary Board Docket no. 123 D.B. 96.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

MORRIS, *Member,* July 23, 1998—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On September 26, 1996, a petition for discipline was filed. On November 12, 1996, the matter was referred to a Hearing Committee (comprised of [    ], [    ] and [    ]). Respondent did not file an answer to the petition. A hearing was held on March 11, 1997, at which respondent represented himself.

On April 2, 1996, the Hearing Committee filed its report recommending a six-month suspension. Neither petitioner nor respondent filed any brief with the Disciplinary Board.

The matter was adjudicated by the Disciplinary Board at its June 10, 1998 meeting.

## II. FINDINGS OF FACT

(1) Respondent was admitted to the practice of law in the Commonwealth of Pennsylvania on January 8, 1982. He maintains an office in his home at [    ]. (NT 75, 79.)

(2) From 1982 until June 4, 1995, respondent was an admitted attorney on active status. By order effective June 14, 1995, the Supreme Court of Pennsylvania placed respondent on inactive status for failure to com-

292

ply with the Pennsylvania Rules for Continuing Legal Education. Subsequent to all material events in this matter, respondent complied with his CLE requirements and he was returned to active status on October 31, 1997. Thus, respondent is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania, as a "formerly admitted attorney" and as an "admitted attorney." Pa.R.D.E. 201(a)(1) and (3).

(3) Respondent is also admitted as an attorney in New Jersey, where he also maintains an office and where the bulk of his practice is located. (NT 64.)

(4) On July 7, 1993, [A] was involved in an automobile accident. (Stipulation of fact no. 1.)

(5) On or about July 10, 1993, respondent agreed to represent [A] in connection with her accident on the basis of a 33 percent contingent fee. (Stipulation of fact nos. 2 and 3.)

(6) On November 18, 1994, a final compliance report and notice was sent to respondent at his record address. The report notified respondent that he was not in compliance with his CLE obligations.[1] The report further notified respondent of the consequences of noncompliance—*i.e.* transfer to inactive status with the attendant obligations of Enforcement Rule 217. (Exhibit P-2.)

(7) On March 22, 1995, the CLE board sent a further notice which provided the details of respondent's noncompliance and specified the actions required to achieve compliance. This notice was sent by certified mail and was received by the respondent. (Exhibit P-2, attachments C and D.)

---

1. The record indicates that respondent received no CLE credits for the period ending August 31, 1994. Between March 22, 1995 and November 13, 1995, respondent received four substantive credits. These credits were insufficient to establish compliance.

(8) By order of May 15, 1995, the Supreme Court of Pennsylvania transferred respondent to inactive status for failure to comply with CLE requirements. By its terms, the order became effective on June 14, 1995. (Exhibit P-1, attachment A.)

(9) By letter addressed to respondent and dated May 16, 1995, Elaine M. Bixler, secretary of the Disciplinary Board, forwarded a copy of the May 15, 1995 order of the Supreme Court of Pennsylvania, transferring respondent to inactive status. In this letter, Ms. Bixler informed respondent that he was required to comply with Enforcement Rule 217.[2] Ms. Bixler further informed respondent that in order to resume active status, he would be required to comply with the Pennsylvania Rules for Continuing Legal Education before an application for reinstatement to the Disciplinary Board would be reconsidered. (Exhibit P-1, attachment B.) This letter with enclosures was sent to respondent by certified mail, return receipt requested, addressed to respondent's last registration address. It was returned to the office of the secretary of the Disciplinary Board marked "unclaimed." (Exhibit P-1, attachment C.)

(10) On June 23, 1995, notice of transfer of respondent to inactive status was published in the *[    ]* and *[    ]*. (Exhibits P-3 and P-4.)

(11) On July 5, 1995, respondent entered his appearance and filed a complaint in the matter of *[A]*

---

2. Rule 217, Pa.R.D.E. sets forth the obligations of "formerly admitted attorneys" which includes attorneys who are transferred to inactive status. See Rule 102, Pa.R.D.E. In its most pertinent parts, Rule 217 required respondent to (1) notify all clients of his status; (2) discontinue his representation in pending matters; and (3) provide to the Disciplinary Board a verified statement of compliance with the rule.

*v. [B],* no. [   ], in the Court of Common Pleas of [   ] County, Pennsylvania. (Exhibits P-5 and P-6.)

(12) From July 5, 1995 through March 10, 1997, respondent continuously represented [A] in the accident case which he filed. This representation included the normal activities associated with discovery and negotiation in such cases. (NT 29-30, 35, 37-39, 40-42; stipulation of fact nos. 8-16.) Respondent ultimately settled the case on March 10, 1997—the day before his hearing in this matter. (NT 59.)

(13) It is unclear and perhaps immaterial when respondent actually became aware that he had been transferred to inactive status. However, he conceded that he was aware of his status by the fall of 1995. (NT 88.)

(14) Throughout the period of his representation of [A], respondent was sent an additional notice of the consequences of his inactive status. On December 22, 1995, the Office of Disciplinary Counsel mailed to respondent a request for statement of respondent's position concerning allegations that respondent had failed to comply with Pa.R.D.E. 217 and that he was continuing the practice of law despite being on inactive status. (Exhibit P-9, attachment A.) This letter was sent by certified mail, but was returned as "unclaimed." (Exhibit P-9, attachment B.)

(15) On or about January 29, 1996, Investigator [C] from the Office of Disciplinary Counsel personally served the request for statement of respondent's position upon respondent's wife. (Exhibit P-7; NT 71-73.) Respondent acknowledged that he in fact received the request for a statement of his position. (NT 72-73, 93.)

(16) Respondent did not submit an answer to the request for his position to the Office of Disciplinary Counsel. (NT 73.)

(17) On or about October 9, 1996, Investigator [D] from the Office of Disciplinary Counsel, personally served upon respondent a petition for discipline pertaining to the present disciplinary matter. (Exhibit P-8; NT 73.) The petition for discipline specifically cites as misconduct respondent's ongoing representation in the *[A] v. [B]* case. (Petition for discipline, paragraphs 10-18.)

(18) A hearing in this matter was originally scheduled for February 6, 1997. On the day of the scheduled hearing, respondent made a telephonic request for a continuance on the ground of illness. (Transcript of 2/6/97 at p. 3.)

(19) The hearing was rescheduled for March 11, 1997.

(20) Respondent settled the [A] case on March 10, 1997 for $8,500. (NT 59.)

(21) Respondent never notified [A] by registered or certified mail that he was on inactive status (Stipulation of fact no. 23), nor did he ever advise her to obtain substitute counsel. (Stipulation of fact no. 24.) Rather, [A] learned of respondent's status when she was contacted by an investigator from the Office of Disciplinary Counsel. (Stipulation of fact no. 18.)

(22) Respondent has never filed any verified statement of compliance with Rule 217. (Exhibit P-1, paragraph 5.)

(23) At all times material to this proceeding, respondent had not been restored to active status. (Stipulation of fact no. 26.)

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent has violated the following Rules of Professional Conduct and Pennsylvania Rules of Disciplinary Enforcement:

"(1) *R.P.C 1.16(a) Declining or terminating representation*

"A lawyer shall withdraw from representation of a client if:

"(1) the representation will result in violation of the rules of professional conduct or other law; . . .

"(2) *Pa.R.D.E. 217(b) Formerly admitted attorneys*

"(b) A formerly admitted attorney shall promptly notify, or cause to be notified by registered or certified mail, return receipt requested, all clients who are involved in pending litigation or administrative proceedings, and the attorney or attorneys for each adverse party in such matter or proceeding, of the disbarment, suspension or transfer to inactive status and consequent inability of the formerly admitted attorney to act as an attorney after the effective date of the disbarment, suspension or transfer to inactive status. The notice to be given to the client shall advise the prompt substitution of another attorney or attorneys in place of the formerly admitted attorney. In the event the client does not obtain substitute counsel before the effective date of the disbarment, suspension or transfer to status, it shall be the responsibility of the formerly admitted attorney to move in the court or agency in which the proceeding is pending for leave to withdraw. The notice to be given to the attorney or attorneys for an adverse party shall state the place of residence of the client of the formerly admitted attorney.

"(3) *Pa.R.D.E. 217(e):*

"Within 10 days after the effective date of the disbarment, suspension or transfer to inactive status order, the formerly admitted attorney shall file with the board a verified statement showing:

"(1) that the provisions of the order and these rules have been fully complied with; and

"(2) all other state, federal and administrative jurisdictions to which such person is admitted to practice. Such statement shall also set forth the residence or other address of the formerly admitted attorney where communications to such person may thereafter be directed."

## IV. DISCUSSION

Respondent was admitted to practice in Pennsylvania in 1982 and has maintained an office at his home in [ ] ([ ] County). Respondent is also admitted in New Jersey, where he performs the vast majority of his legal work. Perhaps because his professional focus was elsewhere, respondent failed to comply with his Pennsylvania CLE requirements for the period ending August 31, 1994. In fact, respondent received no CLE credits for that period.

On November 18, 1994, the CLE board sent respondent a final compliance report for the period in question. The report noted that respondent was not in compliance. The report advised respondent of the steps to be taken to meet the CLE requirements and warned him of the consequences of noncompliance.

Respondent took no steps to comply. Thus, on May 15, 1995, the Supreme Court of Pennsylvania entered an order transferring respondent to "inactive" status. The order became effective June 14, 1995. As a follow-up to the Supreme Court order, the Disciplinary Board wrote to the respondent on May 16, 1995, informing him of the court order and of his resulting obligations under Enforcement Rule 217. (Pa.R.D.E. 217 requires, inter alia, that the inactive attorney withdraw from pending representations and provide written

verification of compliance to the Disciplinary Board.) This letter was sent by certified mail to respondent's office, but was returned "unclaimed." Thereafter, the board resorted to newspaper publication.

Interspersed with these events and with the ensuing disciplinary process, respondent continued to represent [A] in connection with an automobile accident which occurred on July 7, 1993. On July 10, 1993, respondent agreed to represent [A] on a contingent fee basis. On July 5, 1995—at a time when respondent was on inactive status—he filed his appearance and a civil complaint on [A's] behalf in the Court of Common Pleas of [   ] County.

Respondent states that he was unaware that he was "inactive" when he filed the civil complaint. This claim cannot be refuted since the notice from the board was returned "unclaimed" and since respondent stated that he did not see the published notice in either the local newspaper or bar journal. The claim would also involve, however, an inexplicable ignorance of the advisory notices contained in the November 18, 1994 and March 22, 1995 letters from the CLE board.

It is unnecessary to determine the precise date when respondent learned of his status.[3] In the first place, it is not unreasonable to expect an attorney to be continuously aware of the status of his privilege to practice

_____

3. The process of involuntary transfer to inactive status and the ensuing disciplinary process in the case produced a volume of correspondence to the respondent. Two items sent by certified mail (the May 16, 1995 notice from the Disciplinary Board and the December 22, 1995 notice of failure to comply with Pa.R.D.E. 217) were returned "unclaimed." Respondent did receive and acknowledged receipt of the final notice from the CLE board dated March 22, 1995. Of the various correspondence sent by regular mail, respondent could not remember what he actually received. (NT 72-73, 81-83.)

law. More concretely, respondent concedes that as of September or October of 1995, he was aware that he was "inactive" (NT 57), and that he was therefor prohibited from practicing law. (NT 61.)

Notwithstanding his knowledge of this prohibition, respondent continued to practice law in his litigation of the [A] case. Rather than notify his client and adversary and rather than arrange for substitute counsel, as required by Pa.R.D.E. 217(b), respondent simply proceeded with the case: scheduling and re-scheduling depositions, demanding and providing discovery, attempting to settle the case.

At the hearing in this matter, a panel member asked the obvious question: "What was going on in your mind?" Respondent answered: "I just figured I would settle the case and I wouldn't take a case—I mean, I don't know." (NT 96.)

As respondent explains it, the [A] family were friends. [A's] case was his only pending matter in Pennsylvania and he was embarrassed to deal with the situation. (NT 58-59.) Unfortunately, the matter does not admit to such a forgiving explanation. On January 29, 1996, the Office of Disciplinary Counsel requested from respondent a statement of his position as to why he had not complied with Pa.R.D.E. 217. Respondent ignored this request. On October 19, 1996, respondent was served with the instant petition for discipline which specifically alleged unauthorized practice in the [A] case.

Thus, there came a point in October of 1996 when respondent knew that he was subject to discipline because of his continuing unauthorized practice of law in the [A] case. Even at this point, respondent failed to cease his unauthorized practice of law. The hearing in this matter was initially scheduled for February 6,

1997. Respondent's request for a continuance was granted and the hearing was rescheduled for March 11, 1997. On March 10, 1997, respondent settled the [A] case.

The foregoing presents a sorry and disturbing story. Continuing Legal Education is an ongoing professional requirement in Pennsylvania. The consequences of dereliction are not imposed with haste or without repeated warning. However, the ultimate consequence—the loss of the privilege to practice law—is the enforcement tool of the CLE program which the Supreme Court has established and to which it has stated its strong commitment. After totally ignoring his CLE obligations and the ensuing warnings, respondent faced the ultimate consequence when he was placed on inactive status effective June 14, 1995. Thereafter, respondent failed to comply with Pa.R.D.E. 217, and, more seriously, he continued to practice law knowing that he was not entitled to do so. Most astonishingly, he continued up to the day before his disciplinary hearing to handle the very case which was a cited subject of the hearing. It is undisputed that respondent violated R.P.C. 1.16(a) and Pa.R.D.E. 217(b) and (e).

The primary goal of the disciplinary process is the protection of the public from unfit attorneys. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). Here, there is no allegation of general unfitness. Respondent has not been the subject of prior discipline. He did not mistreat his client and there is no indication that he mishandled her case. What respondent mishandled gravely was the matter of his own professional standing. By his willful failure to adhere to the rules of the disciplinary process, respondent turned a remediable situation into an outright defiance of the legal system.

The Supreme Court has firmly stated that it will not tolerate a lax approach to the disciplinary process. *Matter of Leopold,* 469 Pa. 384, 366 A.2d 227 (1976). Thus, the defiant unauthorized practice of law can lead to severe discipline. Disbarment was ordered in *Office of Disciplinary Counsel v. Jackson,* 536 Pa. 26, 637 A.2d 615 (1994), where the unauthorized practice occurred during a five-year suspension for prior misconduct and included a participation in a perjurious claim. Similarly, disbarment resulted where an attorney had an extensive record of prior discipline and where the unauthorized practice was marked by dishonesty. *In re Anonymous No. 135 D.B. 94 and 38 D.B. 95,* 33 D.&C.4th 481 (1996).

Fortunately, respondent's unauthorized practice was limited in scope. There is no allegation of secondary dishonesty and respondent has no prior disciplinary record. Yet, within that limited scope, respondent completely disregarded the rules and processes governing all attorneys. He defied an order of the Supreme Court; he ignored the compliance demands of the Disciplinary Board; and he remained undeterred by the petition filed against him.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, [ ], be suspended from practice for six months. It is further recommended that the expenses incurred in the investigation and prosecution of this matter be paid by the respondent.

Board Members George and Cunningham did not participate in the June 10, 1998 adjudication.

## ORDER

And now, September 11, 1998, upon consideration of the report and recommendations of the Disciplinary Board dated July 23, 1998, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of six months, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.