**In re Anonymous Nos. 71 D.B. 99 and 126 D.B. 99**

Disciplinary Board Docket nos. 71 D.B. 99 and 126 D.B. 99.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

CUNNINGHAM III, *Member,* June 12, 2001—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its find-

ings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On June 3, 1999, a petition for discipline was filed at no. 71 D.B. 99 by Office of Disciplinary Counsel, petitioner, against [ ], respondent in these proceedings. On June 10, 1999, a petition for emergency temporary suspension was filed with the Supreme Court of Pennsylvania by petitioner. On June 18, 1999, a rule to show cause was issued by the Supreme Court. On June 29, 1999 respondent filed an answer to petition for emergency temporary suspension. On July 22, 1999, the petition for emergency temporary suspension was withdrawn by petitioner.

On October 13, 1999, a petition for discipline was filed at no. 126 D.B. 99 by petitioner against respondent. Petitioner filed a motion to consolidate petitions for discipline on October 15, 1999, which motion was granted by Disciplinary Board order of December 1, 1999. The substance of the charges in the petitions is that respondent engaged in the unauthorized practice of law while on inactive status.

A disciplinary hearing was held on February 22, 2000, before Hearing Committee [ ] comprised of Chair [ ], Esquire, and Members [ ], Esquire, and [ ], Esquire. Respondent appeared pro se. Petitioner was represented by [ ], Esquire.

The Hearing Committee filed a report on July 19, 2000, and found that respondent violated the Rules of Professional Conduct as charged in the petition for discipline.

The committee recommended a suspension for a period of two years.

Respondent filed a brief on exceptions and a request for oral argument on August 11, 2000. Respondent took exception to the committee's recommendation of a two-year period of suspension. A brief opposing exceptions was filed by petitioner on August 30, 2000.

Oral argument was held on November 3, 2000, before a three-member panel of the Disciplinary Board consisting of Charles J. Cunningham III, John W. Morris and C. Eugene McLaughlin.

This matter was adjudicated by the Disciplinary Board at the meeting of November 15, 2000.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent was admitted to practice law in Pennsylvania in 1982. He maintains an office at [　]. Respondent is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(3) By order dated December 3, 1997, the Supreme Court of Pennsylvania decreed that:

(a) Respondent be transferred to inactive status pursuant to Rule 219 Pa.R.D.E.; and

(b) Respondent's transfer to inactive status was to take effect 30 days after the date of the order.

(4) By cover letter dated December 4, 1997, Elaine M. Bixler, executive director and secretary of the board, provided respondent with the following:

(a) Copy of the order of the Supreme Court dated December 3, 1997;

(b) Standard guidance of the Disciplinary Board to lawyers who have been transferred to inactive status;

(c) Rules 217 and 219 of the Pa.R.D.E.;

(d) Subchapter E, formerly admitted attorneys, of the Disciplinary Board rules;

(e) Form DB-23i, nonlitigation notice of disbarment, suspension, or transfer to inactive status;

(f) Form DB-24i, litigation notice of disbarment, suspension or transfer to inactive status; and

(g) Form DB-25i, statement of compliance.

(5) Ms. Bixler's December 4, 1997 correspondence was sent by certified mail, return receipt requested and was received by respondent on or about December 8, 1997.

(6) On January 2, 1998, respondent's transfer to inactive status became effective.

(7) Notice of respondent's transfer to inactive status was published in the [   ] and the [   ].

(8) Respondent failed to file with the Disciplinary Board a verified statement in conformance with Rule 217, Pa.R.D.E.

(9) From January 2, 1998 to June 14, 1999, respondent was not in compliance with Rule 219, Pa.R.D.E.

(10) From January 2, 1998 to June 14, 1999 respondent was on inactive status.

(11) On or about July 14, 1998, respondent met with Deputy Chief Disciplinary Counsel Paul J. Burgoyne at which time:

(a) Mr. Burgoyne delivered an informal admonition to respondent for misconduct in an unrelated matter;

(b) Mr. Burgoyne informed respondent that respondent was on inactive status for failure to pay his annual fee;

(c) Respondent assured Mr. Burgoyne that he intended to remit his fee in order to regain active status.

(12) On or about June 11, 1999, petitioner filed with the Supreme Court of Pennsylvania a petition for emergency temporary suspension and related relief pursuant to Rule 208(f), Pa.R.D.E.

(13) The petition was personally served on respondent on June 14, 1999.

(14) On or about June 14, 1999, the administrative office of Pennsylvania courts lawyer assessment office received respondent's 1999-2000 annual fee form and respondent's submission of $375 representing arrearages of $225, annual fee of $105 for the Disciplinary Board and annual fee for the client security fund of $45.

(15) By order and rule to show cause dated June 18, 1999, the Supreme Court of Pennsylvania ordered respondent to prepare and deliver to petitioner a list of the names and addresses of all current clients and issued a rule to show cause why he should not be placed on temporary suspension pursuant to Rule 208(f).

(16) On June 28, 1999, respondent filed a response to petition for emergency temporary suspension.

(17) On June 14, 1999, respondent was placed back on active status by the administrative office of Pennsylvania courts.

(18) On or about July 20, 1999, petitioner withdrew the petition for emergency temporary suspension.

*Charge I*

Practicing—While on Inactive Status

(19) On or about March 16, 1998 and September 28, 1998 *(Commonwealth v. [A]);* July 22, 1998, September 17, 1998 and October 13, 1998 *(Commonwealth v. [B]);* January 2, 1998 *(Commonwealth v. [C]);* April 30, 1998 and August 28, 1998 *(Commonwealth v. [D]);* August 7, 1998 *(Commonwealth v. [E]);* March 5, 1998 *([F] v. [G] Corporation);* May 22, 1998 *([H] v. Commonwealth);* May 22, 1998 *(Commonwealth v. [I]);* January 23, 1998 *(Commonwealth v. [J]);* July 2, 1998 and September 25, 1998 *(Commonwealth v. [K]);* November 2, 1998 *(Commonwealth v. [L]);* November 2, 1998 *(Commonwealth v. [M]);* November 2, 1998 *(Commonwealth v. [N]);* November 13, 1998 *(Commonwealth v. [O]);* November 13, 1998 *(Commonwealth v. [P]);* March 29, 1999 *(Commonwealth v. [Q]);* March 29, 1999 *([R] v. Commonwealth);* March 29, 1999 *([R] v. Commonwealth);* and January 20, 1999 and May 17, 1999 *([S] Corporation v. [T])* (citations omitted), respondent actively represented clients before the courts and/or administrative agencies of the Commonwealth.

(20) Throughout the entire period of the representations listed in paragraph 19 respondent was on inactive status and had not been reinstated to active status.

(21) Respondent never notified nor caused to be notified, by registered or certified mail, return receipt requested, (1) his clients involved in the litigation of the cases enumerated in paragraph 19; (2) the attorneys for the adverse parties in the cases enumerated in paragraph 19; nor (3) the courts or agencies in the cases enumerated in paragraph 19, of his transfer to inactive status.

(22) Respondent testified that he knew he was on inactive status for an extended period prior to payment of his fees. (N.T. at 83.)

(23) Respondent testified that he was not aware of the "effects of it [inactive status] or what it meant, I did not know, and I never did try to check on what the effects of it were other than look it up, and I saw no effects." (N.T. at 83.)

(24) Respondent later conceded that he knew he should have done something else about it and, "Well, I'll put it this way: I guess I'm weaseling now, but I knew that I needed to take steps to make it official." (N.T. at 84.)

(25) Respondent testified that he did not take the necessary steps, yet knowingly continued to practice law. (N.T. at 84, 127, 128.)

*Charge II*

[U] Complaint

(26) On or about March 9, 1995:

(a) [U] (complainant) was operating a vehicle in which her mother-in-law, [V], was a passenger;

(b) complainant's vehicle was struck by a [W] (defendant) at the intersection of [   ] and [   ] Streets, [   ], Pennsylvania; and

(c) complainant and [V] suffered personal injury.

(27) On or about March 10, 1995, complainant and respondent entered into a written fee agreement whereby:

(a) Respondent agreed to prosecute a claim for trespass against all responsible parties with regard to complainant's March 9, 1995, accident; and

(b) It was agreed that respondent would receive 35 percent of any settlement or verdict proceeds.

(28) By letter dated March 21, 1995, respondent notified defendant's insurance company ([X]) that respondent was representing complainant and [V], and that he would be contacting their office to discuss settlement possibilities.

(29) On or about February 26, 1996, respondent filed a complaint in civil action captioned as *[U] and [V] and [Y] v. [W],* Court of Common Pleas, [   ] County, civil trial division, no. [   ].

(30) On or about April 2, 1996, respondent filed a praecipe to reinstate the complaint.

(31) On or about October 22, 1996, respondent filed a continued arbitration application. This application was denied on or about October 23, 1996.

(32) Due to respondent's lack of communication, complainants attempted, on or about January 29, 1997, to terminate respondent's representation and retain new counsel, [Z].

(33) Respondent never replied to [Z's] and complainant's requests for the transfer of the [U] file to [Z].

(34) Due to respondent's failure to respond to [Z] the [U] attempted to personally obtain the file from respondent.

(35) On or about February 27, 1997, the arbitration case no. [   ] was closed.

(36) On or about March 10, 1997, respondent initiated a new action (by filing an identical complaint) captioned as *[U] and [V] and [Y] v. [W]*, Court of Common Pleas, [   ] County, civil trial division, no. [   ].

(37) On or about March 12, 1997, an arbitration hearing was scheduled for November 5, 1997.

(38) On or about September 12, 1997, [Y] met with respondent, whereupon:

(a) [Y] asked respondent to release their paperwork to [Z] office; and

(b) Respondent represented to [Y] that he was in the process of settling the case and would do so prior to a hearing scheduled for November 5, 1997.

(39) On or about November 5, 1997, a report and award of arbitrators was entered in favor of defendants due to the respondent's and the complainant's failure to appear at the hearing.

(40) On or about November 20, 1997, [Y] met with respondent, whereupon respondent represented to [Y]:

(a) That the case was settled for $8,500 each; and

(b) That he would call them later to sign certain release papers.

(41) Respondent did not contradict or offer any evidence contradicting complainant's testimony regarding the purported settlement of complainant's case.

(42) On or about December 4, 1997, respondent filed a notice of appeal from the November 5, 1997, award of board of arbitrators.

(43) On or about December 20, 1997, [Y] met with respondent, whereupon respondent:

(a) Represented that the case had not been settled and had been transferred to another attorney; and

(b) Refused to give the name and telephone number of such attorney.

(44) Not knowing what else to do, the [U] sent respondent a certified letter dated March 16, 1997, requesting respondent to advise them about the status of their case.

(45) Respondent did not reply to the March 16, 1997 letter.

(46) Despite respondent's never notifying the complainants of scheduled hearings he unilaterally filed notices of appeal from the award of the arbitrators.

(47) On or about March 25, 1998, respondent's December 4, 1997 appeal was dismissed, and the matter was remanded to arbitration.

(48) On or about April 8, 1998, an arbitration in *[U] v. [W]* was scheduled for June 18, 1998.

(49) On or about June 18, 1998, a report and award of arbitrators was entered in favor of the defendant for failure of respondent to appear at the hearing.

(50) By letter dated July 15, 1998 (DB-7 letter), petitioner informed respondent of the allegations of the com-

plainant and also alleged that respondent had been on inactive status since January 2, 1998.

(51) The DB-7 letter was sent by certified mail, return receipt requested, and was received by respondent or respondent's agent on or about July 16, 1998.

(52) On or about July 15, 1998, respondent filed a notice of appeal from the June 18, 1998 award of the board of arbitrators.

(53) By letter dated August 12, 1998, petitioner:

(a) Advised respondent that it had not received a response to the DB-7 letter; and

(b) Advised respondent that, according to petitioner's current records, respondent continued to remain on inactive status and requested respondent to contact petitioner immediately to clear up this particular problem.

(54) On or about August 26, 1998, respondent telephoned [AA], Disciplinary Counsel, and stated that he was:

(a) Presently working on a response to the DB-7 letter;

(b) In the process of returning the file to complainant;

(c) In arrears for his annual attorney fee; and

(d) Taking steps to have his annual fee paid to regain his active status.

(55) On or about September 9, 1998, Disciplinary Counsel [AA] telephoned respondent and left a message that he had not received any letter from respondent.

(56) Respondent did not return [AA's] September 9, 1998 message.

(57) Respondent never filed a response to the DB-7 letter.

(58) On or about October 15, 1998, respondent's July 15, 1998 appeal was dismissed and the matter was remanded to arbitration.

(59) On or about December 7, 1998, an arbitration hearing in *[U] v. [W]* was scheduled for February 8, 1999.

(60) On or about February 8, 1999, a report and award of the board of arbitrators was entered in favor of defendant due to respondent's failure to appear at the hearing.

(61) On or about March 8, 1999, respondent filed a notice of appeal from the February 8, 1999 award of the board of arbitrators.

(62) On or about April 8, 1999, respondent's March 8, 1999 appeal was dismissed and the *[U] v. [W]* matter was remanded to arbitration.

(63) On or about May 25, 1999, an arbitration hearing in *[U] v. [W]* was scheduled for July 30, 1999.

(64) On or about July 30, 1999, a report and award of the board of arbitrators was entered in favor of defendant due to respondent's failure to appear at the hearing.

(65) Respondent never provided the complainant with any documents, legal pleadings or correspondence with regard to her case.

(66) Respondent's filings on July 15, 1998, and March 8, 1999, were done at a time when he was on inactive status.

(67) Respondent has a history of discipline consisting of an informal admonition in 1997 and an informal admonition in 1998.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct and Rules of Disciplinary Enforcement:

(1) R.P.C. 1.2(a)—A lawyer shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means in which they are to be pursued.

(2) R.P.C. 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client.

(3) R.P.C. 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(4) R.P.C. 1.16(a)(1)—A lawyer shall not represent a client, or, where representation has commenced, shall withdraw from representation if the representation will result in violation of the Rules of Professional Conduct or other law.

(5) R.P.C. 1.16(d)—Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee which has not been earned.

(6) R.P.C. 3.2—A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

(7) R.P.C. 5.5 (b)—A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction.

(8) R.P.C. 8.4(a)—It is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or to do so through the acts of another.

(9) R.P.C. 8A(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(10) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

(11) Pa.R.D.E. 217(b)—Failing to notify all clients involved in pending litigation or administrative proceedings of the lawyer's transfer to inactive status.

(12) Pa.R.D.E. 217(c)—Failing to notify of the transfer to inactive status all persons to whom the lawyer owes a fiduciary duty and all other persons with whom the lawyer expects to have professional contacts where there was a reasonable probability that they may infer the lawyer was an attorney in good standing.

(13) Pa.R.D.E. 217(d)—Accepting a new retainer or engaging as attorney for another in a new case or legal matter, after the effective date of the lawyer's transfer to inactive status.

(14) Pa.R.D.E. 217(e)—Within 10 days after the effective date of the transfer to inactive status order, the formerly admitted attorney shall file with the board a certified statement.

## IV. DISCUSSION

This matter is before the Disciplinary Board on consolidated petitions for discipline. Petition for discipline no. 71 D.B. 99 contains two charges. Charge I consists

of 10 counts of unauthorized practice of law while respondent was on inactive status. Charge II concerns respondent's failure to adequately represent and communicate with his clients, the [U], in his representation of their personal injury matter. Petition for discipline no. 126 D.B. 99 contains an additional 10 counts of unauthorized practice of law while respondent was on inactive status.

The record is clear that respondent was on inactive status from January 2, 1998, through June 14, 1999, for failure to pay his annual license fee. During this time frame, he continued to practice law by representing clients. Respondent was aware that he was on inactive status by order of the Supreme Court of Pennsylvania. He testified before the Hearing Committee that he knew he was on inactive status long before he actually paid the fees. He attempted to argue that although he knew that he was inactive, he did not know the actual facts or effect of what inactive status meant, but later stated to the committee that he knew he should have taken steps to correct the inactive status.

Respondent argued to the board panel that he viewed the license fee as a debt owed and that debt has been paid. Respondent's argument reflects his misunderstanding of his misconduct. Respondent is not before the board because he failed to pay his annual fee. He is involved in these proceedings because he was placed on inactive status and during that time continued to practice law in violation of the order of the Supreme Court. Respondent received notice of his transfer to inactive status from the executive director of the board in January 1998. He was questioned about his failure to pay by Deputy Chief Dis-

ciplinary Counsel Paul Burgoyne in July of 1998. At that time respondent assured Mr. Burgoyne that he would pay the fee. Respondent took no action to rectify this situation until June of 1999, when he was prompted into action by a petition for emergency temporary suspension filed by petitioner with the Supreme Court.

In addition to the unauthorized practice violations of the rules, respondent violated the rules in his representation of the [U], which representation commenced in 1995. Respondent displayed a complete lack of communication and competence. Respondent's clients were essentially in the dark about the status of their case. Several arbitrations were scheduled in the matter and each time respondent failed to notify his clients of the hearing and failed to appear. Each time the case was dismissed and each time respondent would refile the case and the same thing would happen again. Respondent also failed to provide his client with documents and, having been informed that his clients wished to retain new counsel, failed to cooperate with such counsel in the transfer of his clients' file to the new attorney. Respondent's representation of these clients fell far below the minimum standards of practice.

The Hearing Committee, upon viewing the matter in its entirety, found that respondent acted with disdain for his responsibilities as a member of the bar. The committee recommended a two-year period of suspension and petitioner concurred with this position. Respondent excepts to this recommendation and contends that a public censure is the appropriate discipline. Respondent's position is that the case law does not support a suspension for practicing law while on inactive status for failure to pay the annual fee.

The cases cited by respondent range in discipline from an attorney disbarred after he practiced law while under suspension, to an attorney suspended for six months after he practiced law while on inactive status. *Office of Disciplinary Counsel v. Jackson,* 536 Pa. 26, 637 A.2d 615 (1994); *In re Anonymous No. 123 D.B. 96,* 41 D.&C.4th 290 (1998). While respondent is correct that these cases do not specifically involve a failure to pay the annual fee, the cases cited are similar to the instant matter in that they concern practicing law while under an order of the Supreme Court prohibiting such activity. Therefore, respondent is not correct in arguing that his activities warrant no more than a public censure.

Severe sanctions, including suspension and disbarment, have been imposed for the unauthorized practice of law. In the matter of *In re Anonymous Nos. 78 D.B. 84 and 38 D.B. 85,* 39 D.&C.3d 131 (1986), the attorney continued to practice law after being placed on inactive status for failure to pay his annual fee. The attorney represented to Office of Disciplinary Counsel that he would withdraw from a criminal case, but instead appeared on behalf of his client and kept a one-third fee, evidencing that he had no intention of withdrawing from the case. The Supreme Court disbarred the attorney. In the case of *In re Anonymous No. 48 D.B. 97,* 42 D.&C.4th 254 (1999), an attorney who was suspended for three years failed to withdraw from representation of an estate and continued to hold himself out as a practicing lawyer by preparing documents and collecting counsel fees. The Supreme Court subsequently suspended the attorney for four years.

In the matter cited above at *No. 123 D.B. 96,* the attorney failed to cease the unauthorized practice of law de-

spite clearly knowing he was prohibited from practicing and knowing that he was the subject of discipline. The court imposed a six-month suspension, recognizing that the unauthorized practice was limited to one case, and the attorney had no record of discipline.

Respondent's case falls in the middle of the cited cases in terms of severity. His failure to take remedial steps to regain active status by the simple action of paying a fee reflects negatively on his fitness to practice. It is incomprehensible that an attorney would allow this state of affairs to exist to the point that he places his license in jeopardy. Respondent's conduct in the [U] matter further illuminates respondent's lack of fitness to practice.

The misconduct in the instant case is not as severe as that noted in the cases above that resulted in disbarment and a four-year suspension; however, due to the wide scope of respondent's continued practice, his misconduct in the [U] matter, and his prior history of two informal admonitions, this case warrants a suspension of one year and one day. Such a suspension requires respondent to petition for reinstatement and prove his fitness as an attorney before he is permitted to practice law in the future.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, [    ], be suspended from the practice of law in the Commonwealth of Pennsylvania for a period of one year and one day.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Peck dissented and would recommend a two-year suspension.

Board Members Caroselli, Schultz, Rudnitsky and Teti did not participate in the November 15, 2000 adjudication. Board Members Halpern and Elliott recused themselves.

## ORDER

And now, August 15, 2001, upon consideration of the report and recommendations of the Disciplinary Board dated June 12, 2001, it is hereby ordered that [respondent], be and he is suspended from the bar of this Commonwealth for a period of two years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.