**Bruce L. WISHNEFSKY, Appellant,**

v.

**RILEY AND FANELLI, P.C., Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 28, 2002.

Filed May 16, 2002.

828

Bruce L. Wishnefsky, appellant, pro se.

Albert J. Evans, Pottsville, for appellee.

Before MCEWEN, P.J.E., TODD and MONTEMURO *, JJ.

MONTEMURO, J.

¶ 1 This is a *pro se* appeal from an order granting summary judgment in favor of defendant/Appellee Riley and Fanelli, P.C., in an action grounded on theories of breach of contract and fraud. The same order denied Appellant's cross-motion for summary judgment.

¶ 2 The basis of this case is an alleged oral contract between Appellee, a law firm, and Appellant, a non-lawyer, governing a fee-splitting arrangement. In his Complaint,[1] Appellant contends that Appellee agreed to pay him a forwarding fee of one third of the compensation received from cases he referred, but ceased to do so after recovering $150,000 in fees from damages in a product liability matter. Appellant also asserts that Appellee breached a second oral contract to pay him a salary for six months and then severance, instituted because of the impropriety of the first scheme. It is alleged that in each instance, Appellee engaged in fraudulent conduct to induce Appellant's acquiescence.

¶ 3 Appellee filed preliminary objections to Appellant's complaints and to each of three amendments, then unsuccessfully sought judgment on the pleadings. When discovery was completed, both parties moved for the entry of summary judgment. The trial court granted Appellee's motion, and this appeal followed.

In reviewing a grant of summary judgment, an appellate court may disturb the order of the trial court only where there has been an error of law or manifest abuse of discretion. Nevertheless, the scope of review is plenary; the appellate court shall apply the same standard for summary judgment as the trial court . . .

The record is to be viewed in the light most favorable to the nonmoving party, and all doubts as to the presence of a genuine issue of material fact must be resolved against the moving party.

*Albright v. Abington Memorial Hospital,* 548 Pa. 268, 696 A.2d 1159, 1165 (1997) (citations omitted).

¶ 4 Appellant raises two issues in this appeal, first arguing that the trial court erred in granting summary judg-

---

* Retired Justice assigned to Superior Court.

1. Appellant filed his Complaint in the Court of Common Pleas of Schuylkill County in January of 1999. In August of the same year, Appellant filed suit in the United States District Court for the Middle District of Pennsylvania pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.* The action was dismissed as frivolous and/or failure to state a claim on which relief could be granted in November, 1999, and Appellant's motion for reconsideration was denied in December, 1999.

ment in favor of Appellee based on the doctrine of *in pari delicto*.[2] As this Court found in *Feld & Sons v. Pechner, Dorfman, Wolfee, Etc.*, 312 Pa.Super. 125, 458 A.2d 545, 548 (1983),

> The common law doctrine of *in pari delicto* ("in equal fault") is an application of the principle that " 'no court will lend its aid to a man who grounds his action upon an immoral or illegal act.' " *Fowler v. Scully*, 72 Pa. 456, 467 (1872) (collecting authorities, and quoting YEATES, J., in *Mitchell v. Smith*, 1 Binn. 110, 121 (1804), who was in turn quoting Lord Mansfield in *Holman v. Johnson*, 98 Eng.Rep. 1120 (1775)). When the doctrine is applied, the result is to render the transaction between the parties "absolutely without any force or effect whatever.... The law will leave the parties just in the condition in which it finds them." *Pittsburg v. Goshorn*, 230 Pa. 212, 227, 79 A. 505 (1911). *And see Kuhn v. Buhl*, 251 Pa. 348, 371, 96 A. 977 (1916); *Burkholder v. Beetem*, 65 Pa. 496, 505–506 (1870).

¶ 5 The trial court based its application of the doctrine on the fact that the agreement to share fees is violative of the Rules of Professional Conduct, and therefore unethical and immoral, although not illegal, since the Rules are not statutory.

¶ 6 Rule of Professional Conduct 5.4 prohibits the sharing or splitting of fees between a lawyer and a non-lawyer. The purposes of "this legal mandate," as our Supreme Court observes, are "to maintain a lawyer's independent professional judgment, unhampered by monetary obligation to a party other than his client," and "to protect the Bar from the unautho-

rized practice of law by persons the system does not recognize as presently licensed to practice." *Disciplinary Counsel v. Jackson*, 536 Pa. 26, 637 A.2d 615, 618 (1994) (quoting Report and Recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania, at 17).

¶ 7 Appellant argues that he was not "equal" to the law firm, and thus not equally responsible, as his conduct is not governed by the Rules of Professional Conduct, of which he was excusably ignorant. In fact, he intimates that his position is tantamount to that of a client, to whose money the lawyer is not entitled, even though the client may have acted illegally or immorally. He analogizes his situation with that of the appellants in *Feld, supra*, whose attorneys' fees were returned by the court despite their having committed perjury and other transgressions on the advice of counsel.

¶ 8 However, Appellant was never a client of Appellee. His insistence that he was victimized by Appellee's misrepresentations is barely specious. As the trial court aptly points out, although Appellant may, at the outset, have been unaware of the unethical character of the agreement,[3] he did learn of it later and continued to engage in the same conduct. Indeed, the improper nature of the first agreement was the motivating factor for the second, the employment agreement, which was merely an attempt to avoid any consequences from the first. Appellant does not and may not claim that he was compelled to enter either.

¶ 9 Moreover, Appellant's knowledge or ignorance of the unethical nature of the

---

2. Because of its finding on this issue, the trial court declined to address the remaining arguments advanced by Appellee for the entry of summary judgment.

3. As the trial court also notes, we assume the existence of both agreements under the summary judgment standard requiring the record to be examined in the light most favorable to the nonmoving party.

object is not controlling. The Supreme Court of Illinois, in declining to enforce a fee-splitting agreement between a lawyer and a non-lawyer, explained that,

> [a]lthough courts will generally not enforce contracts which are against public policy where the parties are *in pari delicto,* this is not to say a court must enforce an agreement when the parties are not *in pari delicto.* [T]he interest of the public, rather than the equitable standing of the individual parties, is of determining importance.

Assuming, without deciding, that [Appellant] is correct in [his] contention that the mere difference in the status of the parties suffices to establish that they were not *in pari delicto,* we do not believe that the public interest will be served by accepting [his] argument and enforcing the contract. Under [Appellant's] theory, every fee-sharing agreement between an attorney and a nonattorney which violates [the fee-splitting prohibition] would be enforceable by the lay party since, by definition, such agreements will always involve an attorney and a nonattorney. Although consistent enforcement of such contracts against breaching attorneys might deter attorneys from entering fee-sharing agreements, presumably most lawyers are already deterred from such conduct by the existence of [the disciplinary rule] and by the possibility of sanctions that its violation carries. By refusing in every case to assist the lay party, the courts may deter laypersons as well as attorneys from attempting such agreements. We believe that, in this way the

public will be protected more effectively from the potential harms posed by fee-sharing agreements.

*O'Hara v. Ahlgren, Blumenfeld and Kempster,* 127 Ill.2d 333, 130 Ill.Dec. 401, 537 N.E.2d 730, 737–38 (1989) (citation omitted).

¶ 10 We see no reason to disagree with the Illinois Court's position.[4]

■ ¶ 11 Appellant also argues that his arrangement with Appellee, which provided for "a salary over a six month period based on an annual rate of $70,000, followed by a severance payment of $25,000," (Fourth Amended Complaint at ¶ 50) is permitted under the exception to the fee-splitting prohibition of Rule 5.4. Subsection (a)(3) of the Rule allows the sharing of legal fees between a lawyer and a non-lawyer under the following circumstances:

> Rule 5.4(a)(3). A lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though a plan is based in whole or in part on a profit-sharing arrangement.

¶ 12 What is clearly contemplated by the exception is a formalized program to benefit employees based on the profitability of the firm. In *Disciplinary Counsel v. Jackson, supra,* our Supreme Court explained that the exception, which permits payment of profits earned by lawyers from fees, "is sustainable because there is no direct link between a specific fee and a specific payment to a non-lawyer." *Id.* The *Jackson* Court noted that the exception did not apply because there, "that

---

4. Indeed, we deplore the cynical attitude demonstrated by attorneys who, with cavalier disregard of professional norms, enter into agreements such as the ones under examination here. Any inequality of responsibility between a lawyer and a non-lawyer in such situations is most notably demonstrated in the disparate penalties for violation of the rules: the non-lawyer may lose profits anticipated from the agreement, but the lawyer who is caught engaging in these prohibited activities runs the risk of losing his professional standing altogether.

very evil," the direct link, "is present." *Id.* The same may be said of this case.

¶ 13 Order affirmed.