J-A11041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SCF CONSULTING, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BARRACK, RODOS & BACINE | No. 1413 EDA 2015 |

Appeal from the Order Entered April 24, 2015
in the Court of Common Pleas of Philadelphia County Civil Division
at No(s): February Term, 2015, No. 1613

BEFORE: SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JULY 08, 2016**

Appellant, SCF Consulting, LLC, appeals from the order entered in the Philadelphia County Court of Common Pleas sustaining the preliminary objections of Appellee, Barrack, Rodos & Bacine. Appellant claims the court erred in sustaining the preliminary objections based upon its finding that the Compensation Plan at issue violated Pennsylvania Rule of Professional Conduct 5.4. We affirm.

The trial court summarized the facts of this case as follows:

> [Appellant], a non-lawyer, alleges it had an oral consulting contract with [Appellee] law firm "regarding [Appellee's] representation of various institutional investors who sought to bring class actions alleging securities violations." Pursuant to this contract, [Appellant] claims it was paid a yearly consulting fee, plus "a five percent (5%) share of the firm's annual profits attributable to the cases

---

[*] Former Justice specially assigned to the Superior Court.

originated and worked on by [Appellant] and 2.5% of cases originated by other members of the firm."

"Based on [Appellee's] promised compensation package, [Appellant] quickly became the face of [Appellee] and assisted [Appellee] in becoming legal counsel for the class representatives in virtually all of its cases." . . .

[Appellant] admits that [Appellee] paid [Appellant] its fixed annual consulting fee for each of the years it worked, but [Appellant] alleges [Appellee] failed to pay the share of profits due [Appellant] at the end of 2014.

Trial Ct. Op., 4/24/15, at 1-2 (footnotes omitted).

Appellant filed a complaint asserting claims for breach of contract, unjust enrichment and breach of fiduciary duty.[1] In the complaint, Appellant averred the following facts:

1. [Appellant] is a Pennsylvania limited liability company . . . . Scott C. Freda ("Freda") was the sole member of [Appellant] who provided valuable consulting services to [Appellee].

2. [Appellee is] a Pennsylvania corporation and law firm . . . .

\* \* \*

7. In or about 2001, [Appellee] initially requested Mr. Freda to provide consulting services to [Appellee]

---

[1] We note that Count II of the complaint asserted a claim for violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"). R.R. at 9a-10a. For convenience of the parties, we refer to the reproduced record where applicable. Appellant averred that "[p]ursuant to the WPCL, . . . Leonard Barrack, Esq., is individually liable for [Appellant's] claims as he directed [Appellee] not to pay [Appellant] the wages due . . . ." *Id.* at 9a ¶ 34. The parties stipulated to withdraw Count II of the Complaint with prejudice and to remove Leonard Barrack, Esq. as a party to this action. *See* Stipulation, 3/9/15, at 1 (unpaginated).

regarding its representation of various institutional investors who sought to bring class actions alleging securities violations.

8. Ultimately, Mr. Freda formed [Appellant] in 2006 and continued working with [Appellee] up through early 2014, when the facts giving rise to this lawsuit arose.

9. [Appellee] sought to enter into a long term consulting agreement with [Appellant] based upon, among other things, Mr. Freda's excellent reputation and experience with securities class actions filed on behalf of various State and local governments and unions as clients.

10. [Appellee] induced [Appellant] to act exclusively on its behalf assisting with securities class actions filed on behalf of these entities in exchange for the promise of both a fixed annual consulting fee and an annual profit sharing plan at the firm that paid a **five percent (5%) share of the firm's annual profits attributable to the cases originated and worked on by Mr. Freda** . . . .

\* \* \*

12. [Appellee] breached the parties' agreement by **refusing the make the promised profit share payments to [Appellant] for cases that had resolved and were both originated and worked on by Mr. Freda** in breach of [Appellee's] obligations to [Appellant].

13. Just prior to his departure, Mr. Freda also reminded Mr. [Leonard] Barrack that two large cases that he had both originated and worked on were close to resolving so he expected his five percent (5%) of the firm's profits at the end of the calendar year. These cases were the ***State of Michigan v. AIG*** and the ***PA Retirement System v. BOA*** class actions. . . .

\* \* \*

19. In 2014, Mr. Freda provided substantial assistance to [Appellees] in prevailing on a very substantial case involving the Chicago Police Department and Apollo . . . .

\*    \*    \*

21. Much to Mr. Freda's surprise when he met with Mr. Barrack in December of 2014, he was told that [Appellant] was not going to be paid its percentage of profits previously agreed to . . . .

R.R. at 3a-5a, 7a-8a (emphases added).  Appellant avers in the complaint that he was paid his retainer fee of $210,000.00 per month in the year 2014.  R.R. at 5a.  Appellee filed preliminary objections, which the trial court granted.  This timely appeal followed.  Appellant was not ordered to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant raises the following issues for our review.

a. Whether the [t]rial [c]ourt erred in sustaining Appellee['s] demurrer to all [c]ounts of Appellant['s complaint] on the basis that the Compensation Plan entered into by [Appellees] and [Appellant] was against public policy for violation of Rule of Professional Conduct 5.4, where the [t]rial [c]ourt failed to apply the well-settled standard for resolving preliminary objections and accept as true the well-pleaded factual averments of the [c]omplaint that the Compensation Plan was an express exception to R.P.C. 5.4?

b. Whether the [t]rial [c]ourt erred in sustaining [Appellees'] demurrer to all [c]ounts of [Appellant's c]omplaint on the basis that the Compensation Plan was against public policy, where any determination that the Compensation Plan was in violation of R.P.C. 5.4 is a fact-intensive inquiry and requires a full development of the record, as demonstrated by *Wishnefsky v. Riley & Fanelli*, [799 A.2d 827 (Pa. Super. 2002),] and where the [t]rial [c]ourt failed to allow a full development of the

record, including discovery, prior to dismissing the [c]omplaint?[2]

c. Whether the [t]rial [c]ourt erred in sustaining [Appellees'] demurrer to all [c]ounts of [Appellant's

---

[2] Given our resolution of the first issue, **see infra**, we need not reach this issue. However, we note that Appellant's argument is meritless. Appellant avers that

> [t]he [t]rial [c]ourt and [Appellees] both cite **Wishnefsky v. Riley & Fanelli**, [799 A.2d 827 (Pa. Super. 2002),] for the proposition that where a compensation plan is violative of Rule 5.4, a court cannot enforce such a contract. However there is an important procedural distinction between **Wishnefsky** and the instant matter—in **Wishnefsky** the court granted **summary judgment** for the defendant **after** a full development of the record. **Id.** at 828. Accordingly, **Wishnefsky** compels a very different conclusion than that drawn by the [t]rial [c]ourt—it requires that even where the facts egregiously show on their face that a non-attorney is complicit in the flouting of the ethical rules regarding fee-splitting, the [c]ourt is compelled to allow the full-development of the facts, including discovery, before dismissing those claims. The [t]rial [c]ourt erred by dismissing [Appellant's c]omplaint prior to that full-development of the facts. For that reason alone, the [t]rial [c]ourt's dismissal of [Appellant's c]omplaint must be reversed.

Appellant's Brief at 19-20 (some emphasis added). The Court in **Wishnefsky** referenced discovery in the context of the procedural posture of the case. This Court stated:

> Appellee filed preliminary objections to Appellant's complaints and to each of three amendments, then unsuccessfully sought judgment on the pleadings. When discovery was completed, both parties moved for the entry of summary judgment. The trial court granted Appellee's motion, and this appeal followed.

**Wishnefsky**, 799 A.2d at 828.

- 5 -

c]omplaint on the basis that the Compensation Plan was against public policy, where, even assuming *arguendo* that the Compensation Plan was in violation of R.P.C. 5.4, Pennsylvania public policy has found that such an agreement shall be enforced on the basis that an attorney occupies a legally superior position to a non-attorney, and therefore may not be financially rewarded for entering into a fee-sharing agreement that is in violation of R.P.C. 5.4. ***See John Grigsby v. Rania M. Major and Mark B. Frost, Esquire***. 1994 WL 1251205 (Phila. Com. Pl. 1994).[3]

---

[3] Although we do not address this issue given our resolution of the first issue raised on appeal, we note that the claim was rejected by this Court in **Wishnefsky**. This Court opined:

Assuming, without deciding, that [Appellant] is correct in [his] contention that the mere difference in the status of the parties suffices to establish that they were not in *pari delicto*, we do not believe that the public interest will be served by accepting [his] argument and enforcing the contract. Under [Appellant's] theory, every fee-sharing agreement between an attorney and a nonattorney which violates [the fee-splitting prohibition] would be enforceable by the lay party since, by definition, such agreements will always involve an attorney and a nonattorney. Although consistent enforcement of such contracts against breaching attorneys might deter attorneys from entering fee-sharing agreements, presumably most lawyers are already deterred from such conduct by the existence of [the disciplinary rule] and by the possibility of sanctions that its violation carries. By refusing in every case to assist the lay party, the courts may deter laypersons as well as attorneys from attempting such agreements. We believe that, in this way the public will be protected more effectively from the potential harms posed by fee-sharing agreements.

**Wishnefsky**, 799 A.2d at 830 (citation omitted and emphasis added).

J-A11041-16

Appellant's Brief at 4-5.[4]

First, Appellant contends the trial court erred in sustaining Appellee's preliminary objections in the nature of a demurrer to the complaint because it "included well-pled allegations that the Compensation Plan at issue was an express exception to Rule of Professional Conduct 5.4." *Id.* at 15. Appellant avers that it has "sufficiently pled that [Appellees] induced him to enter into a Compensation Plan that included a profit-sharing component." *Id.* at 18.

Our review is governed by the following principles:

> As a trial court's decision to grant or deny a demurrer involves a matter of law, our standard for reviewing that decision is plenary. Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery **based on the facts alleged in the complaint**. Moreover, when considering a motion for a demurrer, the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.
>
> *  *  *
>
> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. . . . Preliminary

---

[4] Appellant does not raise any issue regarding his unjust enrichment claim in Count III of the complaint. Thus, we do not address the unjust enrichment count. "It is not the obligation of [an appellate court] to formulate [a]ppellant's arguments for him." *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014) (citation omitted).

- 7 -

objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

**Bargo v. Kuhns**, 98 A.3d 686, 689 (Pa. Super. 2014) (emphasis added and citations omitted). "A demurrer does not, however, admit the pleader's conclusions of law." **Hoffman v. Misericordia Hosp. of Phila.**, 267 A.2d 867, 868 (Pa. 1970).

Rule of Professional Conduct 5.4 provides as follows.

(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that:

(1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons;

(2) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that portion of the total compensation which fairly represents the services rendered by the deceased lawyer;

(3) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement;

(4) a lawyer or law firm may purchase the practice of another lawyer or law firm from an estate or other eligible person or entity consistent with Rule 1.17; and

(5) a lawyer may share court-awarded legal fees with a nonprofit organization that employed, retained or recommended employment of the lawyer in the matter.

42 Pa.C.S. § 5.4(a)(1)-(5).

In **Office of Disciplinary Counsel v. Jackson**, 637 A.2d 615 (Pa. 1994), the Pennsylvania Supreme Court stated:

> Disciplinary Rule 3-102(A) and Rule of Professional Conduct 5.4 prohibit the sharing or splitting of fees between a lawyer and a non-lawyer. There can be no question but that Jackson, as a suspended lawyer, is a "non-lawyer" within the meaning of the rules. The purpose of this legal mandate is to maintain a lawyer's independent professional judgment, unhampered by monetary obligation to a party other than his client. In addition, the purpose is to protect the Bar against the unauthorized practice of law by persons the system does not recognize as presently licensed to practice. The only exception to the rule prohibiting sharing fees with non-lawyers is the payment by a law firm into a profit-sharing plan in which non-lawyer employees of the firm share in the profits earned by the lawyers, obviously from fees. The exception is sustainable because there is no direct link between a specific fee and a specific payment to a non-lawyer. In this case, that very evil is present.
>
> Report and Recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania, page 17.

**Id.** at 620.

In **Wishnefsky**, the non-lawyer appellant contended he had an oral contract with the appellee law firm

> governing a fee-splitting arrangement. In his Complaint, [the a]ppellant contends that [the a]ppellee agreed to pay him a forwarding fee of one third of the compensation received from cases he referred, but ceased to do so after

recovering $150,000 in fees from damages in a product liability matter.

***Wishnefsky***, 799 A.2d at 828 (footnote omitted).

The appellant in ***Wishnefsky*** argued that his claim fell within the exception to fee splitting found in Rule 5.4(a)(3). ***Id.*** at 830. This Court rejected this contention and opined that

> [w]hat is clearly contemplated by the exception is a **formalized program** to benefit employees based on the profitability of the firm. In [***Jackson***, ***supra***,] our Supreme Court explained that the exception, which permits payment of profits earned by lawyers from fees, "is sustainable because **there is no direct link between a specific fee and a specific payment to a non-lawyer**." ***Id.*** The ***Jackson*** Court noted that the exception did not apply because there, "that very evil," the direct link, "is present." ***Id.*** The same may be said of this case.

***Id.*** at 830-31 (emphases added); ***accord Epstein v. Saul Ewing, LLP***, 7 A.3d 303, 312-13 (Pa. Super. 2010).

In the case *sub judice*, the trial court opined:

> [Appellant] attempts to cast itself as a beneficiary of the exception to Rule 5.4(a), which allows law firms to have employee profit sharing plans. However, [Appellant] was not an individual employee of [Appellee's] law firm.
>
> \* \* \*
>
> Since the arrangement [Appellant] claims existed between the parties violates public policy, all of [Appellant's] legal claims based on that arrangement fail . . . .

Trial Ct. Op. at 3.

Appellant's argument that his claim fell within the exception to fee splitting found in Rule 5.4(a)(3) is unsupported by the facts as averred in the complaint. ***See Wishnefsky***, 799 A.2d at 830-31. As the trial court

accurately noted, Appellant was not an employee of the firm participating in a formalized program benefiting employees based upon the profitability of the firm. *See id.* Therefore, the exception in Rule 5.4(a)(3) is unsustainable in the instant case because there is a direct link between the specific fees and specific payment to Appellant, a non-lawyer. *See Jackson*, 637 A.2d at 620; *Wishnefsky*, 799 A.2d at 830-31. Based upon the facts alleged in the complaint, we discern no error of law in the trial court's decision to grant the preliminary objections. *See Bargo*, 98 A.3d at 689.

Order affirmed.


Shogan, J. joins the memorandum.

Mundy, J. notes her dissent.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2016