**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| SCF CONSULTING, LLC, | : | No. 7 EAP 2017 |
| | : | |
| | : | Appeal from the Judgment of the |
| Appellant | : | Superior Court entered on 7/8/16 at No. |
| | : | 1413 EDA 2015 affirming the order |
| | : | entered on 4/24/15 in the Court of |
| v. | : | Common Pleas, Philadelphia County, |
| | : | Civil Division at No. 01613 February |
| | : | Term 2015 |
| BARRACK, RODOS & BACINE, | : | |
| | : | |
| Appellee | : | ARGUED:  September 12, 2017 |

*Chief Justice Saylor delivers an opinion announcing the judgment of the Court, joined by Justice Dougherty.  The result of reversal of the Superior Court's order is also supported by Justices Baer and Todd.*

**OPINION ANNOUNCING THE JUDGMENT OF THE COURT**

**CHIEF JUSTICE SAYLOR**                                          **DECIDED:  December 19, 2017**

This appeal concerns the enforceability of an asserted fee-splitting agreement between a law firm and a lay entity.

Appellant SCF Consulting, LLC lodged a civil complaint against Appellee, the law firm of Barrack, Rodos & Bacine, in the common pleas court.  Appellant averred that it had maintained a longstanding oral consulting agreement with the law firm, which the firm purportedly breached in 2014.  According to Appellant, the arrangement was for the solicitation of institutional investors to participate in securities class actions, and

remuneration was to be in the form of a two-and-one-half to five-percent share of the firm's annual profits on matters "originated" by Appellant's principal or on which he provided substantial work. Complaint in *SCF Consulting, LLC v. Barrack, Rodos & Bacine*, No. 1613 Feb. Term 2015 (C.P. Phila.), at ¶10. Among the various counts of the complaint, Appellant advanced causes of action for breach of contract and unjust enrichment.

Appellee interposed preliminary objections denying the existence of a fee-sharing agreement and highlighting that any such arrangement would be in violation of Rule 5.4 of the Rules of Professional Conduct. *See* Pa.R.P.C. 5.4(a) (prescribing, subject to enumerated exceptions, that "[a] lawyer or law firm shall not share legal fees with a non-lawyer"). Referencing *Wishnefsky v. Riley & Fanelli, P.C.*, 799 A.2d 827 (Pa. Super. 2002), among other cases, Appellee took the position that the court should refuse, on public policy grounds, to permit a cause of action to proceed based on an alleged, impermissible contract.

In reply, Appellant claimed that the asserted consulting agreement qualified as an express exception to the anti-fee-splitting rule for an employee "compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement." Pa.R.P.C. 5.4(a)(3). Alternatively, Appellant posited that Appellee's attempt to invoke public policy as a shield was an "audacious defense" which, if credited, would perversely reward the law firm by allowing it to profit from its own unethical conduct. *See* Plaintiff's Memorandum of Law in Response and Opposition to Preliminary Objections in *SCF Consulting*, No. 1613 Feb. Term 2015, at 1, 16. In this regard, Appellant referenced *Grigsby v. Major*, 28 Phila. Rptr. 572, 576 (C.P. Phila. Oct. 4, 1994) (refusing to invalidate a fee-sharing agreement between attorneys on the basis

that it violated the Rules of Professional Conduct, where to do so would result in a windfall).

The county court agreed with Appellee's position concerning both the non-applicability of the exception to Rule 5.4(a)'s prohibition and the unenforceability of the alleged agreement. *See SCF Consulting*, No. 1613 Feb. Term 2015, *slip op.* at 2 (C.P. Phila. Apr. 24, 2015) ("A court cannot enforce an agreement by a law firm to share fees with a non-lawyer because it violates public policy as embodied in the . . . Rules of Professional Conduct." (citing *Wishnefsky*, 799 A.2d at 830)). On appeal, the Superior Court affirmed but limited its treatment to the determination that the Rule 5.4(a) prohibition against fee-splitting applied on its terms and there was no applicable exception. *See SCF Consulting, LLC v. Barrack, Rodos & Bacine*, No. 1413 EDA 2015, *slip op.* at 10-11 (Pa. Super. Jul. 8, 2016). Given this resolution, it was the court's position that there was no need to address the broader public policy arguments. *See id.* at 6 n.3.[1] In a footnote, however, the intermediate court observed that an argument similar to Appellant's had been rejected in *Wishnefsky*. *See id.* The court also declined to address the potential for recovery under a theory of unjust enrichment, since Appellant did not pursue that theory in its appellate brief. *See id.* at 7 n.4.

---

[1] The Superior Court plainly erred in this regard, since the common pleas court had dismissed the complaint by crediting Appellee's position that public policy served to invalidate the alleged consulting agreement. That this sort of arrangement would violate the law firm's ethical obligations could not serve to defeat Appellant's complaint absent the contested linkage between such violation and the agreement's enforceability as a matter of substantive law. Nevertheless, the intermediate court premised the rejection of an alternative argument that "assum[ed] *arguendo* that the [alleged consulting agreement] was in violation of R.P.C. 5.4," on the bare conclusion that the agreement violated Rule 5.4. *SCF Consulting*, No. 1413 EDA 2015, *slip op.* at 6.

We allowed appeal to consider whether, or under what circumstances, the professional conduct rules may be invoked as a defense by a law firm breaching its own ethical obligations by entering into an impermissible fee-splitting arrangement.[2]

Other jurisdictions are divided concerning the appropriate judicial response in this and similar scenarios involving contracts in violation of lawyers' ethical responsibilities, and the parties' arguments track the disparate positions. On the one hand, a majority of jurisdictions follow the approach of the Supreme Court of Illinois, cited in *Wishnefsky*, which generally refuses to enforce agreements that violate professional conduct rules. *See O'Hara v. Ahlgren, Blumenfeld & Kempster*, 537 N.E.2d 730, 737-38 (Ill. 1989) ("By refusing in every case to assist the lay party, courts may deter laypersons as well as attorneys from attempting such agreements. We believe that, in this way, the public will be protected more effectively from the potential harms posed by fee-sharing arrangements."). On the other hand, a minority of courts decline to accord substantive effect to such rules, at least where to do so would result in a windfall to offending attorneys. *See, e.g.*, *Marin v. Constitution Realty, LLC*, 71 N.E.3d 530, 533 (N.Y. 2017) ("[I]t ill becomes defendants, who are also bound by the Code of Professional Responsibility, to seek to avoid on 'ethical' grounds the obligations of an agreement to which they freely assented and from which they reaped the benefits." (quoting *Benjamin v. Koeppel*, 650 N.E.2d 829, 832-33 (N.Y. 1995)). *See generally* Chunlin Leonhard*, Illegal Agreements and the Lesser Evil Principle*, 64 CATH. U.L. REV. 833, 866 (2015) (advocating that courts should recognize the mixed policy implications of applying a *per se* rule of invalidity for contracts that violate public policy).

---

[2] Again, Appellee denies having been a party to any such agreement. At the preliminary objections stage, however, the allegations of the complaint are taken as true. *See, e.g.*, *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 457, 866 A.2d 270, 272 (2005).

The Pennsylvania Bar Association filed an *amicus* brief crystallizing the quandary in this area of the law, as follows:

> The PBA notes that it is clearly this Court's prerogative to declare, as have the courts in a majority of jurisdictions, that the paramount objective of protecting clients is a matter of public policy, and that this policy will be advanced by declaring all fee sharing agreements that are inconsistent with Rule 5.4 to be void as a matter of law. . . .
>
> On the other hand, the PBA recognizes that a lawyer should not be permitted to intentionally take advantage of an innocent nonlawyer, by entering into an agreement violating Rule 5.4, and then raising that violation as a defense to a claim for the agreed upon compensation. . . . It is unreasonable for our courts to be placed in a circumstance where they may be perceived as aiding in attorney misconduct.

Brief for *Amicus* Pa. Bar Ass'n at 13-14. As a middle ground, the PBA suggests that perhaps the Court might wish to consider implementing a *per se* rule that contracts in violation of Rule 5.4 are void as against public policy, but to also temper this approach by permitting quasi-contractual remedies, recovery under the theory of unjust enrichment, or a disgorgement practice implemented through the Disciplinary Board. *See id.* at 14-15.

In *In re Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215 (1984), this Court explained that the standards of professional conduct for lawyers do not have the force of substantive law and pronounced that it was not inclined to "allow our trial courts themselves to use the Canons to alter substantive law[.]" *Id.* at 535, 543, 482 A.2d at 217, 221; *accord* Pa.R.P.C., Preamble and Scope ¶19 ("[N]othing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra disciplinary consequences of violating such a duty."). We recognize that the circumstances before the Court in *Pedrick* were materially distinguishable from those presented in this appeal.

We are aligned, nonetheless, with the broader policy judgment made by our predecessors, at least to the degree that the conduct rules should not be interposed into substantive law when non-regulated parties bear no (or substantially lesser) responsibility relative to the material ethical violations. *Accord Peyton v. Margiotti*, 398 Pa. 86, 92, 156 A.2d 865, 868 (1959) ("When the parties to a contract against public policy or otherwise illegal are not in pari delicto, or equally guilty, and when public policy is considered as advanced by allowing either, or at least the more excusable of the two, to sue, relief may be granted." (quoting 8 P.L.E. §109)). As noted, this approach comports with that of several other jurisdictions, *see, e.g.*, *Atkins v. Tinning*, 865 S.W.2d 533, 537 (Tex. Ct. App. 1993), and we view it as a variant of the lesser-evil principle advocated by some commentators. *See* Leonhard*, Illegal Agreements and the Lesser Evil Principle*, 64 CATH. U.L. REV. at 866.[3]

The ultimate outcome of this case may turn on factual findings concerning Appellant's culpability, or the degree thereof, relative to the alleged ethical violation. We would hold only that the contract cause of action is not *per se* barred by the purported infraction on Appellee's part and, accordingly, the county court's bright-line approach to the unenforceability of the alleged consulting agreement should not be sustained.[4]

---

[3] Certainly, reasonable minds can, and do, differ concerning the appropriate policy stance, and we are respectful of the courts that believe that the greatest good may be achieved through a *per se* approach, on the theory that this most effectively protects clients at large by discouraging improper agreements.

[4] As to the alternative remedies discussed by the PBA, we deem it advisable to permit one of the main equitable considerations (relative to a non-lawyer's culpability) to be assessed in connection with the threshold determination of whether a contract in violation of professional conduct rules should be declared by the judiciary to be unenforceable as against public policy.

The above expression represents the view of only two Justices. A majority of the Court, however, agrees that the present contract action should not have been dismissed. *See* Concurring and Dissenting Opinion at 4 (Baer, J., joined by Todd, J.). Accordingly, the dismissal will be overturned, and the common pleas court will be in a position of making its own judgment as to the relevance of any wrongful conduct on Appellant's part, without present guidance from this Court.

The order of the Superior Court is reversed, and the matter is remanded, through the intermediate court, to the common pleas court for further proceedings.

Justice Dougherty joins the opinion and files a concurring opinion.

Justice Baer files a concurring and dissenting opinion in which Justice Todd joins.

Justice Wecht files a dissenting opinion in which Justice Donohue joins.

Justice Mundy did not participate in the consideration or decision of the case.